## HAMILTON *v.* RATHBONE.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 6.   Argued November 15, 1899. — Decided December 18, 1899.

The right given to a married woman by section 728, Revised Statutes of the District of Columbia, "to devise and bequeath her property," applies to all her property, and is not limited by the language of a prior act, from which this section was taken, to such as she had *not* acquired by gift and conveyance from her husband.

In the construction of statutes, prior acts may be cited to solve, but not to create an ambiguity.

THIS was an action of ejectment brought in the Supreme Court of the District of Columbia by Grace Abbie B. Rathbone as plaintiff, against Frances Rebecca Hamilton, defendant, to recover an undivided one third interest in a parcel of land of which the defendant Hamilton was then in possession.

The common source of title was one Abram Elkin, who received his deed on July 31, 1867. He was married to Lucy V. Elkin, April 15, 1863.

The plaintiff's chain of title was as follows: Deed from Abram Elkin and wife to Fred. G. Calvert, April 29, 1872; deed of same date by Fred. G. Calvert and wife to Lucy V. Elkin. These deeds were evidently given to avoid a direct conveyance from husband to wife. Both deeds ran to the grantee, "his (or her) heirs and assigns, to and for his (or her) and their sole use, benefit and behoof forever."

Lucy V. Elkin died May 3, 1876, leaving her husband, Abram Elkin, and four children: (1) Grace, the plaintiff, subsequently married to Rathbone; (2) Lucy Caroline; (3) Charles Calvert; (4) Harry Lowry, who died in 1885 at the age of nine or ten years.

Abram Elkin disappeared in June, 1876, and has not been heard of since.

Plaintiff sues for an undivided one third interest as one of the heirs at law of her mother.

Defendant's chain of title was as follows: Lucy V. Elkin, who died May 3, 1876, leaving a will by which she appointed Fred. G. Calvert, her brother, her sole executor. She directed that all her property, real and personal, should be sold, and gave her husband $1000 out of the proceeds of the sale, directing that the residue of such proceeds, after the payment of funeral and other necessary expenses, should be divided equally between her four children. Calvert duly qualified as executor.

In February, 1879, as such executor, Calvert sold the land in controversy to the defendant Frances Rebecca Hamilton, and conveyed it to her by a deed (February 20) which recited that the sale had been made under the power conferred upon him by the will.

A plea of not guilty having been interposed, the case was tried in the Supreme Court of the District by a jury, and a verdict directed for the defendant. On appeal to the Court of Appeals from the judgment entered upon the verdict so rendered, that court set aside the verdict and remanded the

case for a new trial. *Rathbone* v. *Hamilton*, 4 App. Cases D. C. 475.

A second trial was had, and the jury instructed to return a verdict for the plaintiff. From the judgment entered upon this verdict, the defendant appealed to the Court of Appeals, which affirmed the judgment. *Hamilton* v. *Rathbone*, 9 App. Cases D. C. 48. Whereupon defendant Hamilton sued out a writ of error from this court.

*Mr. A. S. Worthington* for plaintiff in error. *Mr. A. A. Lipscomb* was on his brief.

*Mr. M. J. Colbert* for defendant in error. *Mr. H. G. Milans* was on his brief.

Mr. Justice Brown delivered the opinion of the court.

Plaintiff brings ejectment as one of the heirs at law, namely, the eldest of three children, of her mother Lucy V. Elkin, who died May 3, 1876. Defendant relies upon a purchase made by her from the executor of Mrs. Elkin's will. To establish her title, then, plaintiff is bound to show that the property did not pass under the will of her mother, but descended to her heirs at law. The question whether it did so pass depends upon the construction given to certain acts of Congress then in force, relative to estates of married women.

By the act of April 10, 1869, c. 23, 16 Stat. 45, it was enacted :

" That in the District of Columbia the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were *feme sole*, and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise and bequeath *the same*, or any interest therein, in the same manner and with like effect as if she were unmarried.

" Sec. 2. *And be it further enacted*, That any married

woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property in the same manner as if she were unmarried ; but neither her husband nor his property shall be bound by any such contract nor liable for any recovery against her in any such suit, but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were sole."

Under the first section, the right of a married woman to dispose of her property as if she were a *feme sole* does not apply to property acquired by gift or conveyance from her husband. Did the case rest here, there could be no doubt that Mrs. Elkin took this property from her husband subject to such disabilities as were imposed upon married women by the common law, except so far as the same may have been modified by the statutes of Maryland then in force, *Sykes* v. *Chadwick*, 18 Wall. 141, and the fact that she took title through her brother, Fred. G. Calvert, as an intermediary grantee, did not affect the question. *Cammack* v. *Carpenter*, 3 App. D. C. 219. The deeds from Abram Elkin to Calvert, and from Calvert to Lucy V. Elkin, were made upon the same day, recorded at the same hour of the same day, and both were for the same nominal consideration of five dollars. Add to this the fact that Calvert was the brother of Mrs. Elkin, and the inference is irresistible that it was intended as a transfer from husband to wife. We concur in the opinion of the Court of Appeals that "assuming the facts to exist as they are stated in the record, there is no escape from the conclusion that the property was acquired by gift or conveyance from the husband, though it was through the brother of the wife of the grantor as mere medium of transfer of title. There is no attempt to show that there was any real pecuniary consideration for the deeds, and the consideration stated in them is purely of a nominal character ; and all the facts attending the transaction show beyond doubt that the real purpose and design of the husband was to transfer from himself to his wife the title to the property. The passing the title through a third party in no manner changed the effect of the transfer. Though the agency of a third party was

employed, it was no less in legal effect and contemplation a gift or conveyance from the husband to the wife."

Whether under the common law she held this property as her separate estate with power to devise or otherwise dispose of it, as if she were a *feme sole*, is a question which does not arise in view of the statutes then existing, which we think control the case.

In the revision of the statutes applicable to the District of Columbia, (passed in 1874,) the above act of 1869 was rearranged and became sections 728 to 730, as follows:

"SEC. 727. In the District the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts.

"SEC. 728. Any married woman may convey, devise and bequeath *her property*, or any interest therein, in the same manner and with like effect as if she were unmarried.

"SEC. 729. Any married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried.

"SEC. 730. Neither the husband nor his property shall be bound by any such contract, made by a married woman, nor liable for any recovery against her in any such suit, but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were unmarried."

The difference between these sections and the former act is noticeable. By the first section of the act of 1869, the absolute right of a married woman over her property is not given with respect to such property as she has acquired by gift or conveyance from her husband. The final clause of this section reads as follows: "But such married woman may convey, devise and bequeath *the same*," (that is, her separate property, except as above stated,) "or any interest therein, in the same manner and with like effect as if she were unmarried." The first clause of this section is repeated in Rev. Stat. sec. 727,

but the second clause is thrown into a separate section (728), which declares that "any married woman may convey, devise and bequeath *her property* or any interest therein, in the same manner and with like effect as if she were unmarried." Literally, this section extends to all her property, and is not limited to the "same" property described in section 727, and thus excluding that which she acquired by gift or conveyance from her husband. Under the act of 1869, therefore, the power of a married woman to convey, devise and bequeath her property does not extend to such as she acquired by gift or conveyance from her husband, while under section 728 it extends to *all* her property, however derived.

The second section of the act of 1869 likewise reappears without change as sections 729 and 730, and no question is likely to arise with respect to any differences in construction.

The decisive question then is whether section 728 is to be construed as an independent act, or whether the plaintiff is at liberty, by referring to the prior act from which it was taken, to show that it was the intention of Congress to limit it to the cases named in such prior act. The general rule is perfectly well-settled that, where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction. But where the act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given to it. *Heydon's case*, 3 Fed. Rep. 76; *United States* v. *Freeman*, 3 How. 556; *Smythe* v. *Fiske*, 23 Wall. 374; *Platt* v. *Union Pacific Railroad Co.*, 99 U. S. 48; *Thornley* v. *United States*, 113 U. S. 310; *Viterbo* v. *Friedlander*, 120 U. S. 707, 724; *Lake County* v. *Rollins*, 130 U. S. 662; *United States* v. *Goldenberg*, 168 U. S. 95.

This rule has been repeatedly applied in the construction of the Revised Statutes. The earliest case is that of *United States* v. *Hirsch*, 100 U. S. 33, in which a section (5440), defining

and punishing conspiracies to defraud generally, was held not
to be restricted by the prior act of March 2, 1867, from which
the section was taken, which was limited to conspiracies aris-
ing under the revenue laws.

The question was again elaborately considered in the case
of *United States* v. *Bowen,* 100 U. S. 508, in which it is
broadly stated that " when the meaning is plain the courts
cannot look to the statutes which have been revised to see if
Congress erred in that revision, but may do so when necessary
to construe doubtful language used in expressing the meaning
of Congress." Rev. Stat. section 4820 enacted that " the fact
that one to whom a pension has been granted for wounds or
disabilities received in the military service has *not* contributed
to the funds of the Soldiers' Home, shall not preclude him
from admission thereto. But all *such* pensioners shall sur-
render their pensions to the Soldiers' Home during the time
they remain there, and voluntarily receive its benefits."
Bowen was the recipient of an invalid pension, but he *had*
contributed to the funds of the Soldiers' Home, and the
question was whether that fact withdrew him from the clause
which requires pensioners to surrender their pensions to the
home while inmates of it. The section was held to be limited
to those (" such ") who had *not* contributed to the funds of the
home, although by the act from which the section was taken,
*all* invalid pensioners who accepted the benefit of the home
were bound to surrender their pensions to its use while
there.

The language above quoted was repeated in *Cambria Iron
Co.* v. *Ashburn,* 118 U. S. 54, the court again holding that,
where the meaning of the Revised Statutes is plain, it cannot
recur to the original statutes to see if errors were committed
in revising them. To the same effect are *Deffeback* v. *Hawke,*
115 U. S. 392; *United States* v. *Averill,* 130 U. S. 335; *United
States* v. *Lacher,* 134 U. S. 624, in which the court said that
if there were an ambiguity in a section of the Revised Statutes,
resort might be had to the original act from which the section
was taken, to ascertain what, if any, change of phraseology
there is, and whether such change should be construed as

changing the law. See also *Bate Refrigerating Co.* v. *Sulz-berger*, 157 U. S. 1; *United States* v. *Goldenberg*, 168 U. S. 95.

Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity, that an extended review of them is quite unnecessary. The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to, to *solve*, but not to *create* an ambiguity. If section 728 were an original act, there would be no room for construction. It is only by calling in the aid of a prior act that it becomes possible to throw a doubt upon its proper interpretation. The word "property," used in section 728, includes every right and interest which a person has in lands and chattels, and is broad enough to include everything which one person can own and transfer to another. The main object of the revision was to incorporate all the existing statutes in a single volume, that a person desiring to know the written law upon any subject might learn it by an examination of that volume, without the necessity of referring to prior statutes upon the subject. If the language of the revision be plain upon its face, the person examining it ought to be able to rely upon it. If it be but another volume added to the prior Statutes at Large, the main object of the revision is lost, and no one can be certain of the law without an examination of all previous statutes upon the same subject.

As bearing upon the proper construction of this section we are also referred to an act approved June 1, 1896, c. 303, 29 Stat. 193, entitled "An act to amend the laws of the District of Columbia as to married women, to make parents the natural guardians of their minor children, and for other purposes." The sections of the act, which are pertinent here, are as follows:

"That the property, real and personal, which any woman in the District of Columbia may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and real, personal or mixed property which shall come to her by descent, devise, purchase or bequest, or the gift of any person, shall be and remain her sole and separate property, notwith-

standing her marriage, and shall not be subject to the disposal of her husband or liable for his debts, except that such property as shall come to her by gift of her husband shall be subject to, and be liable for, the debts of the husband existing at the time of the gift.

"Sec. 2. That a married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract in reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property, and she may, by a promise in writing, expressly make her separate estate liable for necessaries purchased by her or furnished at her request for the family.

\*       \*       \*       \*       \*

"Sec. 11. That sections seven hundred and twenty-seven, seven hundred and twenty-nine, and seven hundred and thirty of the Revised Statutes of the United States for the District of Columbia, be and the same are hereby repealed."

It will be observed that, by the first section, all the property of a married woman owned at the time of marriage, or which shall afterwards come to her in any manner or from any person, shall remain her sole and separate property, notwithstanding her marriage, thus enlarging the operation of section 727, which limited it to such as she had not acquired by gift or conveyance from her husband. By the second section power is given to her to bargain, sell and convey her property as if she were a married man, but nothing is said about her power to bequeath it. It will be noticed, however, that while sections 727, 729 and 730 of the Revised Statutes are repealed, no repeal of section 728 is made. Evidently Congress understood section 728 to give to a married woman the power to devise and bequeath her property without limitation, and therefore allowed it to stand. If full effect be not given in this case to section 728 as including all the property of a married woman, one of two results must follow: Either that the law of 1896 changed the construction to be given to section 728, although it did not repeal or modify it; or the construction of that section, contended for by the plaintiff, must pre-

vail, and married women are still under the disabilities of the act of 1869, though that act and sections 727, 729 and 730 which reproduced it are expressly repealed. The more reasonable construction is that Congress understood section 728 to give to a married woman the power to devise and bequeath her property without limitation, and therefore allowed it to stand.

Our conclusion is that the property in question passed under the will of Mrs. Elkin. The view we have taken of this subject renders it unnecessary to consider the other questions in the case.

*The judgment of the Court of Appeals must be reversed, and the case remanded to that court with instructions to reverse the judgment of the Supreme Court of the District of Columbia, and to remand the case to that court with directions to grant a new trial.*