## MERCHANTS NATIONAL BANK OF BALTIMORE *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 20.  Argued March 12, 15, 1909.—Decided May 17, 1909.

Where two sections of the Revised Statutes when taken together are not free from ambiguity, and cannot be harmoniously applied, recourse may be had to legislation prior to the Revised Statutes from which the provisions of those sections were drawn in order to arrive at the correct meaning. *Hamilton v. Rathbone*, 175 U. S. 418, and *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, distinguished.

Sections 5214 and 3411, Rev. Stat., cannot be so construed together, and effect given to both, as to leave a national bank liable to the duty imposed by § 5214 and yet entitle it to the exemption provided by § 3411 under the contingency stated therein.

The provisions in § 3411, Rev. Stat., exempting banks from taxation

on circulation, does not relate to national banks but to state banks
only.

One of the public policies of the National Bank Act was to secure the
public credit and encourage the issue of notes to circulate as cur-
rency founded upon United States bonds, and § 3411 will not be
construed as intending to exempt those national banks that allowed
their circulation to fall below five per cent of their capital from the
taxation provided by § 5214 to create a fund to bear the burden
common to all national banks for engraving and printing the notes.

A uniform construction ever since its enactment for a long period, in
this case over thirty-five years, engenders doubt of a new and dif-
ferent construction.

42 Ct. Cl. 6, affirmed.

THE facts are stated in the opinion.

*Mr. James H. Hayden* and *Mr. R. E. Lee Marshall,* with
whom *Mr. J. Hanson Thomas* was on the brief, for appellant:

The sections of the Revised Statutes drawn in question are
without inconsistencies or ambiguities. They must be en-
forced in accordance with their terms. Resort to the acts of
Congress, in which they had their origin, for purposes of inter-
pretation, is not permissible.

The Revised Statutes must be treated as a legislative dec-
laration by Congress of what the statute law of the United
States was on December 1, 1873, on the subjects they embrace,
and when the meaning of the language employed is plain the
court cannot look to the statutes which have been revised
to see if Congress erred in that revision. *United States* v.
*Bowen,* 100 U. S. 509; *Arthur* v. *Dodge,* 101 U. S. 34; *Victor* v.
*Arthur,* 104 U. S. 498; *Myer* v. *Car Co.,* 102 U. S. 1; *Cambria
Iron Co.* v. *Washburn,* 118 U. S. 57; Rose's Notes on the U. S.
Reports, 860, 861; *Bate Refrigerating Co.* v. *Sulzberger,* 157
U. S. 30; *Hamilton* v. *Rathbone,* 175 U. S. 418; *Cheney* v. *State,*
74 N. E. Rep. 892, 893.

The words and context of the Revised Statutes in question
are fairly susceptible of but one meaning, namely, that the
liability of national banks to taxation under § 5214, is limited

by § 3411. They should be administered accordingly. But, whether taken by themselves or construed in connection with the antecedent legislation, the intention of Congress to extend the exemption prescribed by § 3411 to national bank circulation is equally clear.

It must be presumed that when the Revised Statutes were enacted Congress was apprised, not only of the scope and meaning of the previous law, which it carried into the Revised Statutes, but also of the policy and intent thereof and of the reasons which originally led to the passage of the same. Congress must be presumed, therefore, to have known the reason and theory which had led to the enactment of the five per cent exemption of banking circulation from taxation, the specific conditions which it was designed to meet, and the kind of circulation to which it originally referred, and, further, to have known that mainly, if not entirely, as a result of the previous legislation in question, national bank circulation had superseded state bank circulation and had become the recognized form of currency of the country. With full knowledge of these facts Congress deliberately enacted, under § 3411, the provisions of the previous law, and exempted the outstanding circulation of any bank from taxation when the same was reduced to an amount not exceeding five per cent of its capital, as the percentage of bank notes likely to be lost or destroyed in circulation is at least as great in the case of national banks as of state banks, and theoretically the principle of the exemption is equally as appropriate to the one kind of circulation as to the other.

The construction placed by the court below upon § 3411, is not tenable, for the reason that it would render § 3416 nugatory. The result of such a construction would be an unjust discrimination against the circulation of national banks.

Upon any principle of construction the Court of Claims erred in restricting the general language of § 3411 to the particular case of national banks succeeding state banks by conversion, and rightly construed, § 3411, as it stood in the orig-

inal law, extended to any and all state banks an exemption.
from taxation upon their circulation when the same was re-
duced to an amount not exceeding five per cent of the capital,
and the exemption aforesaid proceeded upon the assumption
that five per cent of outstanding circulation was lost or de-
stroyed.

When, therefore, Congress carried this general principle of
tax exemption into the Revised Statutes, and in express
terms provided that the benefits of the principle should be
extended to national banks, it thereby intended to apply to
the circulation of national banks the same principle which it
had theretofore applied to the circulation of state banks.
Any other construction would involve a direct discrimination
in that regard against national banks.

*Mr. Assistant Attorney General John Q. Thompson* and *Mr.
Philip M. Ashford* for The United States:.

It is the primary duty and object of the court to ascertain
the intention and purpose of the legislative body in the enact-
ment of any legislation which may come before the court for
construction and interpretation. If such intention and pur-
pose are clearly set forth in the act, then the statute is said
to interpret itself, and needs no interpretation or construction
by the court. But if the intention of Congress is not clearly
expressed, and doubt exists as to the construction intended to
be given by the law-making power, then it becomes the prov-
ince of the court to ascertain the objects and purposes which
the legislation was intended to subserve. *Smythe* v. *Fiske*,
23 Wall. 374, 380; *Hamilton* v. *Rathbone*, 175 U. S. 419, 421.

Therefore, it is the province of the court, if necessary, to
examine the title of the chapter containing the sections under
consideration, and resort may be had to the history of the
original act to the extent that the court may refer to the jour-
nals of the legislative body for the purpose of ascertaining the
circumstances and conditions which gave rise to the enactment.
And this may be done where the ambiguity refers, not merely to

the meaning of particular words, but to such ambiguity or doubtful meaning as may arise in respect to the general scope and meaning of the statute when all of its provisions are considered. Endlich on Interpretation of Statutes, § 86, p. 115; *United States* v. *Moore*, 95 U. S. 760; *United States* v. *Union Pacific R. R.*, 91 U. S. 72; *Kohlsaat* v. *Murphy*, 96 U. S. 153, 160; *Platt* v. *Union Pacific R. R.*, 99 U. S. 48, 63, 64; *Coosaw Mining Co.* v. *South Carolina*, 144 U. S. 550; *Hamilton* v. *Rathbone*, 175 U. S. 414, 419.

Considering the object and purposes for which § 5214 was originally enacted, it is apparent that Congress has made no exceptions to the application of said section, or attempted by any legislation to exempt any national bank or association from paying the tax therein provided.

A review of the legislation of Congress with respect to state and national bank circulations, and such cases as *Twin City* v. *Nebeker*, 167 U. S. 196, 203; *Veazie Bank* v. *Fenno*, 8 Wall. 533, 549; *National Bank* v. *United States*, 101 U. S. 1, 6, clearly show that it was the legislative intent in the enactment of §§ 6 and 14 of the act of June 30, 1864, now §§ 3410, 3411, 3412 and 3416, Rev. Stat., so far as they relate to the subject under discussion, to exempt from taxation on circulation only the five per cent of state bank notes which might be outstanding. This being so, it follows that appellant was bound to pay the tax on its own notes without regard to the percentage of its capital stock represented thereby.

For forty years the treasury department officials have given to the sections in question the construction for which we here contend. Until about the time the appellant made application to the Treasurer for the refund of the duties or taxes paid, the national banks universally acquiesced in that construction. Such long-continued interpretation and practice by the treasury officials must have very great weight with the court in determining the construction or application of the sections in question. *United States* v. *Finnell*, 185 U. S. 236, 244, and cases cited.

Mr. Justice White delivered the opinion of the court.

Organized as a state bank in 1834, the appellant was con-
verted, in June, 1865, into a national banking association. For
nearly thirty years after its organization as a national bank,
that is, up to July 1, 1904, the bank was assessed for and paid
the duty of one-half of one per cent upon the average amount
of its notes in circulation, in conformity with § 5214, Rev. Stat.
Availing itself of the right conferred by § 5218, Rev. Stat.,
copied in the margin,[1] the bank made application to be re-
funded the sum of $4,713.01, on the ground that in making cer-
tain of the half-yearly payments under § 5214 there had been a
miscalculation, and besides, because of an error of law, some of
the half-yearly payments had been exacted when the bank was
exempt. We put aside so much of the claim as was based upon
mere errors of calculation, as no contention on that subject is
here presented.

The alleged error of law or asserted right to exemption rests
upon the assumption that by the operation of § 3411, Rev.
Stat., the bank was not liable to pay the half-yearly duty on
its outstanding circulation whenever the amount of its circula-
tion fell below five per cent of its capital, a contingency, which
it was insisted, had arisen during certain of the half-yearly
periods between January, 1888, and July, 1904. The request
to be refunded having been rejected by the Treasurer of the
United States, this suit was commenced and this appeal was
taken from a judgment in favor of the United States. 42 Ct.
Cls. 6.

In the argument for the bank it is stated that all the errors
relied upon are embraced in the following propositions:

_____

[1] Sec. 5218. In all cases where an association has paid or may pay
in excess of what may be or has been found due from it, on account of
the duty required to be paid to the Treasurer of the United States,
the association may state an account therefor, which, on being certi-
fied by the Treasurer of the United States and found correct by the
First Comptroller of the Treasurer, shall be refunded in the ordinary
manner by warrant on the Treasury.

"1. The said court erred in holding and deciding that the claimant, being a national bank, was not exempt from taxation on its notes in circulation during the half-yearly periods when the average amount of its said notes was less than five per centum of its chartered capital.

"2. The said court erred in holding and deciding that § 3411, Revised Statutes, relates solely to the taxation of the outstanding circulating notes of state banks which had ceased to exist or had been converted into national banks, and did not limit the claimant's liability to taxation on its own outstanding circulation."

Without presently determining whether the right to be refunded, even if otherwise well founded, was without merit because of the voluntary nature of the payments or the effect of the statute of limitations, we come to consider the merits of the contention. It depends upon whether § 5214, Rev. Stat., is limited and controlled by the provisions of § 3411, Rev. Stat. The two sections are as follows:

"SEC. 5214. In lieu of all existing taxes, every association shall pay to the Treasurer of the United States, in the months of January and July, a duty of one-half of one per centum each half-year upon the average amount of its notes in circulation, and a duty of one-quarter of one per centum each half-year upon the average amount of its deposits, and a duty of one-quarter of one per centum each half-year on the average amount of its capital stock, beyond the amount invested in United States bonds."

"SEC. 3411. Whenever the outstanding circulation of any bank, association, corporation, company, or person is reduced to an amount not exceeding five per centum of the chartered or declared capital existing at the time the same was issued, said circulation shall be free from taxation; and whenever any bank which has ceased to issue notes for circulation deposits in the Treasury of the United States, in lawful money, the amount of its outstanding circulation, to be redeemed at par, under such regulations as the Secretary of the Treasury shall

prescribe, it shall be exempt from any tax upon such circulation."

It is insisted that the sections, considered as applicable to the same subject, are harmonious, and that giving effect to both, while leaving a national banking association liable to the duty imposed by § 5214, will yet entitle it to the exemption provided in § 3411 when the contingency stated in that section has come to pass. And as this result, it is argued, is clear and free from all doubt, considering the text of the two sections, recourse may not be had to legislation prior to the Revised Statutes, from which the provisions of the sections were drawn, in order to arrive at their correct meaning. Reference to such prior legislation, it is insisted, cannot be resorted to for the purpose of creating a doubt, but only to solve one otherwise arising from the text, citing *Hamilton* v. *Rathbone*, 175 U. S. 418; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 36, and cases cited.

Accurately considering the text of the two sections and the context of the respective titles of the Revised Statutes in which they are found, we think the contention that the sections are free from ambiguity and may be harmoniously applied without the necessity of construction, is without merit. It is conceded that for the more than thirty-five years since the enactment of the Revised Statutes, in the administration of the national-bank act, national banking associations have been required to and have without question paid the half-yearly duty on circulation, wholly irrespective of the exemption provided in § 3411, a condition which clearly suffices, to say the least, to engender doubt as to the correctness of the belated contention now urged. Besides, the sections are in different titles of the Revised Statutes, the one (§ 3411) Internal Revenue, the other (§ 5214) National Banks. While § 5214 and the other sections contained in the title in which it is found leave no doubt that § 5214 was intended to deal with the outstanding circulation of national banks, not only the text of § 3411, but the other sections of the chapter under the general

title Internal Revenue in which it is found, cause it to be ques-
tionable whether that section is at all concerned with the sub-
ject of the circulating notes of a national banking association.
As suggesting doubt and ambiguity concerning the contention
that national banking associations are embraced within the
enumeration of banks and bankers made in § 3411, whose out-
standing circulation would become "free from taxation" in
the specified contingency, it is to be observed that the enu-
meration conforms generally to that made in other sections of
the chapter, which other enumerations clearly relate only to
state banks and private bankers. · Indeed, this is strengthened
by the fact that in the Revised Statutes associations organized
under the national-bank act are distinctively characterized as
national banking associations, and that their designation by
that call is explicitly made use of in various sections of the
chapter in which § 3411 appears.  In view (*a*) of the distinct
provisions as to the circulating notes of national banks, found
in the appropriate title of the Revised Statutes, (*b*) of the gen-
eral subject to which the chapter in which § 3411 is contained
relates, and (*c*) that in that chapter, when it was deemed essen-
tial to legislate concerning national banking associations, they
were specially designated by that appellation, it would seem to
result that it cannot possibly be said that § 3411 clearly has
relation to the outstanding circulation of national banking
associations.  Moreover, the assumption that, considering the
text of the two sections and treating them as relating to the
same subject, they are each susceptible of being fully enforced,
is a mistaken one.  The duty upon the outstanding circulation
imposed by § 5214 is assessed half-yearly, not upon the amount
outstanding at any particular time, but upon the average for
the six months.  Section 3411, however, provides that the
outstanding circulation to which it refers "shall be free from
taxation whenever such outstanding circulation is reduced to
an amount not exceeding five per centum of the chartered or
declared capital existing at the time the same was issued," a
provision which clearly contemplates a positive and perma-

nent exemption to arise from the reduction to the limit specified and wholly incompatible with the system of average provided in § 5214. This results because by that system of average, even although the sum of the outstanding circulation of a national banking association might, on a particular day or days of a half-yearly period, fall below five per centum of its capital, yet the duty to be paid would attach wholly without reference to that condition, and be determined by the average for the six months. Besides, when there is taken into account the plain meaning of the concluding portion of § 3411, concerning a deposit with the Treasurer of the United States of money to meet outstanding circulation of the banks embraced within that section, it becomes manifest that the circulation referred to in § 3411 cannot be the circulation of a national banking association referred to in § 5214, since the method of deposit of money to secure the payment of outstanding circulation provided by § 3411 is absolutely in conflict with the methods provided for securing and redeeming outstanding circulation of national banking associations, as expressly provided in the sections of the Revised Statutes concerning national banking associations, which sections are cognate to and inseparably connected with the provisions of § 5214. And, beyond all this, it is apparent that to treat the outstanding circulation referred to in § 3411 as embracing the outstanding circulation of national banking associations, contemplated by § 5214, would require it to be held that the very purpose intended to be accomplished by the national-bank act was frustrated by the exemption accorded by § 3411. It has long been settled that one of the public policies embodied in the national-bank act was to secure the public credit and encourage the issue of notes to circulate as currency, founded upon the security of the bonds of the United States, a purpose which would be directly discouraged by exempting a national banking association which reduced its circulation below five per centum of its capital from the payment of a duty thereon, and yet enforcing the payment of such duty against a national bank which had not reduced its out-

standing circulation to the limit stated. In addition, as the half-yearly duty provided by § 5214 was intended, among other things at least, to create a general fund for paying the cost of engraving and printing the circulating notes of national banking associations (*Twin City Bank* v. *Nebeker*, 167 U. S. 196), § 3411 could not be construed as now claimed without giving rise to the assumption that it was without reason intended to exempt national banking associations which might choose to allow their circulation to fall below five per centum from a burden which, in the nature of things, was common to all such banks.

But, in effect, it is argued, conceding that all the ambiguities just stated arise from treating the two sections as relating to the same subject, and from seeking to harmoniously enforce them on that hypothesis, yet there is no warrant for considering the genesis of the provisions in order to dispel the apparent conflict between them, because of the express terms of § 3417, Rev. Stat., found in the same chapter which embraces § 3411. The section relied upon is in the margin.[1] It will be observed that it is expressly declared therein that the provisions of the chapter in which the section is contained shall "not apply to associations which are taxed under and by virtue of title National Banks." This declaration, however, is limited by the words "except as contained in sections," which are enumerated, one of them being § 3411. From this it is argued that, whatever may otherwise be the conflict between § 5214 and § 3411, construed together, as § 3417 causes § 3411 to be broadly applicable to national banking associations, that section must

---

[1] SEC. 3417. The provisions of this chapter, relating to the tax on the deposits, capital, and circulation of banks, and to their returns, except as contained in sections thirty-four hundred and ten, thirty-four hundred and eleven, thirty-four hundred and twelve (thirty-four hundred and thirteen), and thirty-four hundred and sixteen, and such parts of sections thirty-four hundred and fourteen, and thirty-four hundred and fifteen as relate to the tax of ten per centum on certain notes, shall not apply to associations which are taxed under and by virtue of Title "National Banks."

be treated as limiting and controlling the provisions of § 5214. .But § 3417, unless it be treated as surplusage, implies that § 3411 might not in and of itself be broadly applicable to national banking associations. While there is no doubt that the result of § 3417 is to cause § 3411 to be applicable to national banks, the doubt and ambiguity which must arise from the attempt to make that provision broadly applicable so as to cause it to be controlling upon § 5214 is in nowise removed by § 3417. In other words, giving full effect to § 3417 requires us yet to determine the nature and extent of the application of the provisions of § 3411 to national banking associations, a determination, as we have seen, essential in order to reconcile the confusion and contradiction which otherwise would prevail from the co-association of the provisions without limitation or interpretation.

A consideration of the origin of the provisions at once demonstrates the unsoundness of the contention relied upon, establishes the correctness of the administrative construction which has prevailed from the beginning, and dispels the confusion and contradiction which necessarily results from the interpretation contended for. We need not specifically trace and develop the origin of the provisions, since it is expressly conceded in the argument for the appellant that "the provisions of the acts of Congress . . . which are carried into the Revised Statutes as §§ 3407–3417 did, not, *when and as originally passed,* relate to national banks or to the circulation of national banks, but related to state and private banks. . . ." So, also, it is conceded that, wholly irrespective of the provisions of the national-bank act of 1864, there was imposed by acts of Congress relating to internal revenue burdens of taxation so heavy upon the circulation of state banks and private bankers, as, by their necessary operation, caused the retirement of such circulation as far as possible. Nor need we refer specially to the origin of § 3411, since it is conceded that the provision was enacted originally in order not to compel the payment by state banks of a tax on circulation when such

circulation no longer existed, upon the assumption that if ninety-five per cent had been retired the remainder was no longer in existence, or, at all events, was not within the power of the bank to retire. It is also unquestioned that where a state bank had become converted into a national bank, or where a national bank had assumed the liabilities of a state bank, the national bank was liable, in addition to the duty on its own circulation, to the payment of the internal revenue tax upon the outstanding circulation of the state bank absorbed by it or the liabilities of which had been assumed, and that as to such circulation national banks were given the benefit of the presumption of loss or destruction or possible retirement when all but five per cent of the circulation of the state bank had been actually retired. The concrete result of the provisions just stated and of the antecedent legislation are aptly portrayed in the reënactment in § 14 of the act of July 13, 1866 (14 Stat. 98, 146–147, c. 184), of previous provisions on the subject, said § 14 reading as follows:

"That the capital of any state bank or banking association which has ceased or shall cease to exist, or which has been or shall be converted into a national bank, shall be assumed to be the capital as it existed immediately before such bank ceased to exist or was converted as aforesaid; and whenever the outstanding circulation of any bank, association, corporation, company, or person shall be reduced to an amount not exceeding five per centum of the chartered or declared capital existing at the time the same was issued, said circulation shall be free from taxation; and whenever any bank which has ceased to issue notes for circulation shall deposit in the Treasury of the United States, in lawful money, the amount of its outstanding circulation, to be redeemed at par, under such regulations as the Secretary of the Treasury shall prescribe, it shall be exempt from any tax upon such circulation; and whenever any state bank or banking association has been converted into a national banking association, and such national banking association has assumed the liabilities of such state bank or

banking association, including the redemption of its bills, by any agreement or understanding whatever with the representatives of such state bank or banking association, such national banking association shall be held to make the required return and payment on the circulation outstanding, so long as such circulation shall exceed five per centum of the capital before such conversion of such state bank or banking association."

It is apparent that these provisions were in substance adopted in the Revised Statutes and now constitute §§ 3410, 3411 and 3416, and that as illumined by the history which we have given it clearly results that the provision of § 3417, expressly making § 3411 applicable to national banking associations, caused that section to apply not in the broad sense now claimed, but that it was expressly made applicable in order, beyond peradventure, to give to national banks, as representing state banks, the benefit of the presumption of loss or inability to retire the circulation of the state bank when such circulation had been reduced by ninety-five per centum of the volume thereof.

It is strenuously argued that to thus construe the provisions in question will destroy the effect of the revision by causing one or more of the sections contained in the revision to become redundant or superfluous. To test this contention we must recur to the provision of the act of 1866, which has been previously quoted. By that provision, a, What should constitute the sum of the capital of a state bank for the purpose of taxation was declared; b, The right to an exemption of circulation, when such circulation was less than five per cent, was also declared, and the power to deposit money with the Treasurer of the United States to the extent of the outstanding circulation and thus avoid the continuance of a tax thereon was also given; c, The liability of a national banking association for the tax upon the circulation of a state bank which had been assumed as well as the right of the national banking association to the benefits of the exemption when ninety-five per cent of the circulation of the state bank had been retired was also expressed. The argument is that to give

to § 3411 the restrictive significance we have adopted is to render § 3416 superfluous. It is indeed true that the effect of the construction in an extremely narrow and technical sense might be considered as operating a redundancy. But the asserted redundancy is more seeming than real, as § 3416 was plainly not enacted in order to reiterate what was expressly or impliedly embodied in § 3411, but was to declare the obligation of a national bank in a stated contingency to make return and payment on the outstanding circulation of a state bank which was subject to taxation.

The elaborate argument made at bar, to the effect that Congress at the time of the revision must have contemplated the non-existence of state banks and the extinguishment of their circulation, and, therefore, must be considered as having intended to make § 3411 applicable to the outstanding circulation of national banks, is, we think, so clearly in conflict with the plain manifestation of the purpose of Congress, as shown by the reënactment in the revision of the provisions as to state banks and their circulation, as to require no further notice.

*Affirmed.*