STATE ex rel. MORRISON COUNTY AGRICULTURAL ASSOCIATION v. S. G. IVERSON.[1]

January 10, 1913.

Nos. 18,012—(266).

**Mandamus — public officer.**

Where the state auditor awarded to an association which was not entitled thereto the aid and recognition provided for by Laws 1911, cc. 280, 381, relating to the encouragement of county and district agricultural societies, mandamus was the proper remedy to compel him to make the award to the society legally so entitled.

**Decision sustained.**

Finding of the trial court in favor of the relator in such proceeding sustained.

Upon the relation of the Morrison County Agricultural Association, the district court for Ramsey county issued its alternative writ

[1] Reported in 139 N. W. 498.

of mandamus directed to Samuel G. Iverson, auditor of the state of Minnesota, directing him to execute and deliver to relator his warrant or voucher for $428 or show cause why he had not done so. The respondent made answer, alleging, among other matters, that the Morrison County Agricultural Co-operative Society was duly incorporated and in all respects complied with the laws applicable to such society; that it succeeded the Little Falls Street Fair Association, which had been in existence since 1906, and received state aid as the only organization of the kind in Morrison county on fairs held in the years 1906, 1908, 1909, and 1910. The answer also set out the facts in respect to the hearing before and decision by respondent concerning the claims of the two societies. The matter was heard before Olin B. Lewis, J., who made findings and ordered that a peremptory writ issue. From the judgment entered pursuant to the order, respondent appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, *Alexander L. Janes,* Assistant Attorney General, and *N. N. Bergheim,* for appellant.

*Richard N. Gardner,* and *Lancaster, Simpson & Purdy,* for respondent.

PHILIP E. BROWN, J.

It has been the settled policy of the state, as indicated by its legislation for many years, in order to stimulate interest in agriculture and in the state agricultural society, to donate money for the purpose of encouraging the holding of a fair in its several counties. This appears from the statutes which have been called to our attention by counsel in support of their contentions.

The first act so referred to is Laws 1897, p. 97, c. 86, which passed into R. L. 1905, with slight changes, as section 3098, which section appropriates $14,000 to county agricultural societies and others, to be divided pro rata among such of those societies as have a membership of 25 or more, are active, and hold annual fairs, paying out in premiums as much as they receive from the state. This section further provides that the pro rata shall be paid to the oldest active society in the county, except where there are two of the same age, in which case it shall be divided equally between them. It further

provides that if fairs have been advertised, but the holding thereof has been prevented, and expenses have been incurred for advertising preparation, the state shall pay a stated sum to the association. It is made the duty of the state agricultural society to certify to the state auditor a list of all societies that have complied with the provisions of this section.

R. L. 1905, § 3080, provides, among other things, for the selection of three delegates by each county and district agricultural society, and that if no county society exists, or if an existing one fails to hold an annual fair, and any city therein shall maintain an annual street fair devoted to agricultural interests, then three delegates shall be selected from such street fair association, the senior association, however, to be entitled to such membership, provided that to entitle such society to membership it must maintain an active existence, have a yearly membership of 25, hold annual fairs, and shall have paid out each year at least $300 in premiums.

By Laws 1905, p. 490, c. 307 [R. L. Supp. 1909, § 3080—1], it was provided that if no county agricultural society exists in any county, or if such society fails to hold an annual fair, and any city therein shall maintain annually a street fair devoted to agricultural interests, such street fair association shall choose delegates to the state agricultural society; provided, however, that the senior association shall be entitled to such membership, all conditioned the same as provided by R. L. 1905, § 3080, with reference to the maintenance of an active existence, etc.

R. L. 1905, § 3097, provides that an agricultural society may be formed by citizens of any county, or of two or more counties jointly, but only one such society shall be organized in any one county. This section was in turn amended by Laws 1909 p. 506, c. 416 [R. L. Supp. 1909, § 3097], to the effect that if any county agricultural society has been incorporated for six years, and during that time has failed to hold or assist in holding any county agricultural fair, then another county agricultural society may be incorporated and shall be entitled to receive the state aid, as conditioned by R. L. 1905, § 3098.

By Laws 1911, p. 389, c. 280, all standing appropriations in aid of county and district agricultural societies were repealed as to any

fairs held after 1910, and $75,000 was appropriated to aid county
and district agricultural societies pursuant to the provisions of R.
L. 1905, § 3098, or any amendments thereof, to be paid out for pre-
miums, but only to county and district agricultural fairs held dur-
ing the year 1911 and annually thereafter. Laws 1911, p. 530, c.
.381, amends section 3080 by omitting therefrom all provision con-
cerning street fairs. Section 5 of the same act provides for the in-
corporation of agricultural societies by citizens of any county or
counties jointly, but only one such society shall be organized in any
county.

The controversy in this case turns upon the question of which
one of two agricultural societies organized in the same county is en-
titled to the state aid and to membership in the state society.

The case comes here on an appeal from a judgment entered in a
mandamus proceeding awarding relief to the relator, the Morrison
County Agricultural Association, which we will hereafter refer to as
the Motley Association, as against the protest of the appellant, the
Morrison County Agricultural Co-operative Association, which we
will call the Little. Falls Society. The proceeding was tried by the
court without a jury, findings were made, and the same are unchal-
lenged, so far as the facts are concerned, and are to the following
effect, among other things:

That the Motley Association was incorporated as an agricultural
society on February 3, 1911, and has since maintained an active
existence, with a membership of more than 25 residents and citizens
of the county; that it held its first annual fair in Motley in Septem-
ber, 1911, paying out in premiums $428 to exhibitors; that when it
was organized there was not in the county, or in any district of
which the county was a part, any agricultural society, nor had there
been one therein within six years prior to such incorporation. It is
upon these facts, so found, that the claim of the Motley Association
is based.

As to the claim of the Little Falls Society, the court found the facts as follows:

That it had existed as an unincorporated association for several years prior to the date of this proceeding, and had held fairs at Little Falls, in Morrison county, during that time, including the years 1906, 1908, 1909 and 1910; that it had duly paid premiums and made report and received state aid for such years, no other society receiving any part of such aid during such period; that it then had a membership of over 25 citizens and residents of the county, and held annual street fairs as stated; that in July, 1911, this society, at a special meeting, duly resolved to incorporate under the name of Morrison County Agricultural Co-operative Society, that the business carried on by the Little Falls Street Fair Association should be continued by the proposed society, and that all moneys and property of such association should be delivered to the officers of the latter, upon the filing of its articles of incorporation, and further resolved that the society would proceed immediately to perfect its incorporation, etc.; that thereafter the members of the association executed articles of incorporation, and pursuant thereto the society so organized adopted, held, and acted upon all the property and rights of the association transferred by the resolution, and became an organized body under the name stated; that this society held a fair in the county in September, 1911, and paid in premiums to exhibitors the sum of $623, making due report thereof.

The court further found that the Motley Association and the Little Falls Society applied to the state auditor for recognition as the senior society entitled to share in the state aid; that both appeared, and that after a hearing the auditor rendered his decision in favor of the Little Falls Society.

As conclusions of law, the court resolved the controversy in favor of the Motley Association, and this appeal followed.

1. The Little Falls Society contended below, and urges in this

court, that mandamus was not the proper remedy, and that the court erred in denying its motion to quash the writ. This contention is predicated upon the proposition that the statutes contemplate that the decision of the state auditor shall be final, and not made subject to review by mandamus, unless it appears, as it does not here, that there was an abuse of discretion, and, further, that this remedy, while available to compel an officer to act, will not be awarded to compel him to change his decision after action. We cannot sustain this contention. It was the duty of the auditor to award relief to only one of the parties. The statutes provide which party is so entitled, and the auditor has no discretion to refuse relief to the association or society entitled thereto by law; and if it appear that he has made a wrong determination in this matter, mandamus is the proper, and probably the only, remedy. See 2 Dunnell, Minn. Dig. § 5762.

2. Coming, now, to the merits of the appeal, the question to be determined is: Which of these two organizations was entitled to state recognition and aid? The court below was of the opinion that the Little Falls Society was not the senior organization, for three reasons, the first and third of which were: (1) Because the fair held by it in 1910 was not in compliance with the law; and (3) because the society failed to file its articles of incorporation and proof of the publication of its certificate of incorporation with the secretary of state, and furthermore did not comply with the statute relating to the incorporation of county agricultural societies. The Little Falls Society contends that neither of these grounds is tenable. We will not stop, however, to discuss this contention; for we think the case may well be disposed of on the second ground assigned by the lower court, and for the purposes of this case it may be assumed, without any expression of opinion to such effect, that the facts do not warrant the deductions stated. Neither will we give any weight to the fact that the Little Falls Society was incorporated as a co-operative association, and not under the provisions under which its rival was incorporated.

The second ground assigned by the lower court for its decision was that the law giving street fair associations recognition and rep-

resentation under the acts relating to agricultural societies and state aid was omitted from and repealed by Laws 1911, p. 530, c. 381, some months prior to the time when the Little Falls Society was incorporated. The last-named society insists that the court below erred in this conclusion, because, as claimed by it under the existing statutes, properly construed, the legal status of the rival claimants should not be determined from the mere time of their incorporation, and that the fact of incorporation should not be considered to be the test as to the right of priority; the true criterion being the seniority and activity in fact, as evidenced by the holding of fairs. These deductions are made largely from a consideration of the several acts referred to, both prior to and also in connection with the act of 1911. But in considering these statutes we must be mindful of the rule stated in Hamilton v. Rathbone, 175 U. S. 414, 421, [20 Sup. Ct. 155, 158, 44 L. ed. 219], where it is observed:

"Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity, that an extended review of them is quite unnecessary. The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to, to *solve,* but not to *create* an ambiguity."

The further point is urged that it is unreasonable to believe that the legislature intended to give the Motley Association any preference merely because it became incorporated first, and that the Little Falls Society, having succeeded to the rights of the street fair association, and being in effect a continuation thereof, such association having held fairs for several years prior to 1911, is entitled, both upon legal and equitable construction of the statutes, to preference. There would be force in these contentions, were this a case where equitable principles could be applied; but the controversy here is over a mere bounty, to which neither claimant has any claim outside of the statutory provisions, and both parties, in the beginning, had the same opportunity to bring themselves within the provisions of the statutes by incorporating as an agricultural society, etc. Neither can

we see how the street fair association had anything to transmit to its corporate successor. The solution of the whole case depends upon statutory construction, and we are unable to see how any other result can be reached than the one arrived at by the trial court, when we consider that Laws 1911, p. 530, c. 381, omits reference to street fair associations, and that chapter 280 of the same laws likewise omits to make any appropriation for any kind of fairs except district and county fairs. It seems clear that, if the street fair association had continued in existence, it would not have been entitled to state aid for holding a fair in 1911, and that its alleged successor, as such, cannot stand in any better position as against a county agricultural association, which is its senior in the matter of existence as a county agricultural society.

Judgment affirmed.

Heard before HALLAM, J., took his seat.