In re Naturalization Proceedings of
**JOYCE IDA ALLEN**
Petition No. 31
District Court of the Virgin Islands
Christiansted Sub-Judicial District
St. Croix
January 16, 1930*
*Same case on appeal, see p. 598, this volume*

*As taken from Transcript of Record in the United States Court of Appeals, Third Circuit.

J. C. FOX, *Special Naturalization Examiner*

D. H. JACKSON, *Amicus curiae*

WILLIAMS, *Judge*

The petitioner is the wife of William Allen, a British subject, whose case — number 30, September Term, 1929, Christiansted Sub-Judicial District (1 V.I. 212) — was heard during said term, and disposed of adversely to the said William Allen. It appears from the record that the Allens were married a number of years before the transfer of the Danish West Indies to the United States; that Mrs. Allen was born in the United States of America on the 21st day of August, 1889, and that thereafter she went, with her parents — her father being minister — to Saint John, Danish West Indies, now the Virgin Islands of the United States, where they remained about a year and a half, and then removed to one of the British West Indies — Barbados — and from that time on they moved from one British island to another, in the Leeward Islands group, until in 1916,

when they went to the United States and remained a year, after which time they returned to one of the British West Indies, namely, Antigua, and remained a short time there, and then went to Saint Kitts, British West Indies, where they remained until around the year 1920 when they came to these islands, and landed here on the Steamship Guiana, on the 1st day of June, 1920, according to the record.

Mrs. Allen has been examined and found to be generally qualified for admission to citizenship. It is also believed that the Allens intend to make the United States, or some possession thereof, their permanent home. It was so stated by her, and I have no reason to doubt her veracity at all in that respect.

There is a distinction between this case and the case of Charles Stanley Mayhew, No. 1-1927 Christiansted Sub-Judicial District, which was disposed of on October 3rd, 1927. In that case it could not be concluded that the United States would be his permanent home. In this case, as I said, I am satisfied that the Allens intend to make the United States, or some possession thereof, their permanent home, that is to say, their domicil, as they have made Saint Croix their domicil already, in my judgment. Therefore, I say that, generally, she is qualified to admission; but, it seems to me she is in exactly the same position that her husband was found to be in a few months ago. At that time I stated that it was my opinion that this court did not have general naturalization jurisdiction; that it had only a special or limited jurisdiction, that is to say, jurisdiction for special purposes.

As I went into this question at considerable length in said matter, to wit, in the Matter of Naturalization Proceedings of William Allen, No. 30, September Term, 1929, Christiansted Sub-Judicial District (supra) — the husband of this petitioner — I shall not do so here, but shall content

myself by merely recapitulating the opinion rendered in that case.

The Act of February 25th, 1927 (ch. 192, 44 Stat. 1234; 8 U.S.C. former §§ 5b, 5c, 358a, 377a, 601 note, 731 note; 48 U.S.C. § 1395)*, is composed of five sections, only four of which relate to matters of naturalization. It would seem perfectly obvious that Mrs. Allen can claim no right under any one of the first three sections, nor does she really make any claim thereunder. Reference, therefore, will only be made to them for purpose of illustration.

Subsection 2, section 1, deals with certain former Danish subjects, and certain Danish subjects who have made, and who may make, renunciation. That subsection also provides that those persons may renounce "before a court of record" — that is to say, before any court of record, and does not confine them to the District Court of the Virgin Islands of the United States.

Subsections (b) and (c) of section 1 deal with natives, as do subsections (a) and (b) of section 2.

Subsection (c) of section 2 deals with certain persons who resided in these islands in 1917, and who are still residing here.

Section 3 deals with persons born here after January 17th, 1917.

So far, outside of subsection (a) of section 1, no provision has been made for a court; hence it was necessary to go on further and declare in what court the naturalization proceedings contemplated anywhere in section 2 were to be had. Consequently, they added section 4 thereof, declaring that "The District Court of the Virgin Islands of the United States shall have jurisdiction for naturalization purposes." Realizing that occasions may arise for cancellation of certificates of citizenship, and that the general naturalization laws have not been extended to this jurisdiction, the Act

*For later provisions on the subject of sections 1-4 of this Act, see 8 U.S.C. §§ 1406, 1421.

(section 4) goes on to say that the jurisdiction shall include "jurisdiction for the purpose of setting aside and cancelling certificates of citizenship under section 15 of the general naturalization laws [June 29, 1906; 8 U.S.C. former § 405; see 8 U.S.C. § 1451]." There is also appended to section 4 a statement that, for the purpose of the naturalization laws, residence in the Virgin Islands of the United States shall be considered as residence in the United States.

I gave this matter very careful consideration in the first Allen case (Petition of William Allen, supra), and since then I have given the matter further thought, and it is still inconceivable to me how it can be claimed that under this Act the general naturalization laws of the United States have been extended to these islands. It seems to me perfectly obvious that the reason for the first and second clauses of section 4 was to simply confer jurisdiction upon the District Court for the benefit of the persons described in section 2. Jurisdiction had been given in connection with subsection (a) of section 1. In all other parts, excepting these two, the Act of Congress is self-executory, or practically so.

██ While it is true that neither party has raised the question of the jurisdiction of this court, in this matter, it is the duty of every court, of its own motion, to inquire into the subject-matter of the suit, to determine whether or not it has jurisdiction, regardless of the wishes of the parties, and to be circumspect in seeing that it arrogates to itself no powers, but only exercises those conferred by law. Minnesota v. Hitchcock, 185 U.S. 373, 22 S. Ct. 650, 46 L. Ed. 954; Ex parte McCardle, 7 Wall. 506, 19 L. Ed. 264. And, in the latter case, it was declared, by Chief Justice Chase, that "Judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the law confer." Neither can the parties confer jurisdiction by consent. Ex parte

Schollenberger, 96 U.S. 369, 24 L. Ed. 853; Penn. Railroad v. St. Louis Railroad Co., 118 U.S. 290, 6 S. Ct. 1094, 30 L. Ed. 83; Hip v. Babin, 19 How. 271, 15 L. Ed. 633; and the recent case of Bryant v. Zimmerman, 278 U.S. 63, 49 S. Ct. 61, 73 L. Ed. 184. Therefore, I am obliged to question whether the parties wish me to or not, or even though they may oppose such an inquiry.

■ - ■ Now, as I said in the first Allen case, "Congress might have created a special court through which to enforce this Act, or declare that any court of record shall have jurisdiction, as under section 1, or, as it did, confer jurisdiction on the District Court. I wish to reiterate and emphasize the fact that the proceedings under section 1 may be taken before any court of record, while the place of the proceedings to be taken under section 2 is not provided for therein, and therefore, the place (court) had to be provided for elsewhere, which was done, in section 4. That, in my opinion, is all that was done, or meant to be done, by the use of the words 'naturalization purposes,' and of which I cannot see there can be any serious doubt . . . Congress was very careful in singling out the classes of persons upon whom it desired to confer citizenship and to give the privilege of naturalization, it seems to me. If Congress had intended to extend the naturalization law generally, to this jurisdiction, it could have done so in very simple words, and doubtless would have done so . . . There are no words directly conferring this right. The first part of section 4 merely deals with the matter of jurisdiction and not with substantive rights. If Congress intended to so extend the general naturalization laws, I think I can say, and say it without flippancy, with the Court in Sexton v. Daly, et al., 95 Cal. App. 754, 273 Pac. 109, a case wherein it was contended that certain property rights had been disposed of in the instrument in question, that, 'singularly inappropriate language was employed to accomplish its (her) pur-

271

pose.' I do not ascribe to Congress any such ineptitude of expression or circumlocution in this case. I am perfectly satisfied that if it had been intended that the general naturalization laws of America were to be extended here they would have been extended in unequivocal terms. If the whole naturalization law had been extended, why specifically mention and extend section 15 thereof, which is in the very body of the general naturalization law [June 29, 1906, supra]? Would any legislative body that had extended the naturalization law here expressly mention some particular section in the middle thereof? Does not this very express and specific Act exclude the idea that the general law has been extended here? This seems to me to be an additional (and conclusive) evidence of the intention of Congress, which intention was to favor only those persons mentioned in the first three sections of the Act of February 25th, 1927."

If it is contended that the last clause or part of section 4 has any bearing on this point, I may say, that I disagree with that entirely, as that clause or part is perfectly consistent with the balance of the Act as just construed. "It is entirely possible, and not improbable, that Congress meant to give those persons who go to the States, and, desiring naturalization, the benefit of residence here. The fact of their going to the States, and the time that would have to be spent there before naturalization, would qualify them, in a general sense, for citizenship. It is entirely possible that Congress might not have considered these outlying islands alien in many respects, or some respects at least, as being a school for naturalization, while at the same time recognizing certain obligations, albeit only moral in their nature, to confer citizenship on certain persons and to provide for the naturalization of certain other persons." (In re Naturalization Proceedings of William Allen, supra). Furthermore, they probably intended to protect

such persons as had already instituted naturalization proceedings in the United States, and then had to come here for some reason or other.

I have read the Act from its four corners, and considered the separate parts thereof with all the care of which I am capable, and I still feel that it is impossible to wring from any part of it, or the whole of it considered together, the jurisdiction for which the petitioner contends. The Act, it seems to me, is entirely free from ambiguity. There being no ambiguity, there seems to be nothing for construction. United States v. Wiltberger, 5 Wheat. 75, 96, 5 L. Ed. 37; Hamilton v. Rathbone, 175 U. S. 414, 419, 20 S. Ct. 155, 44 L. Ed. 219, 221. However, if there were ambiguity, the legislative intent, amongst other things, may be looked to [for the purpose of] dissolving any doubt. Hamilton v. Rathbone, supra; United States v. Missouri Pac. R.R. Co., 278 U.S. 269, 49 S. Ct. 133, 73 L. Ed. 322. If this is done in this case, I think the conclusion would be in accordance with that already announced in the William Allen case. Both the Report of the Committee on Insular Affairs of the House, and the statement of its Chairman, show that Congress only intended to take care of any moral obligation that might have arisen in virtue of section 6 of the Treaty of Session between the United States and Denmark (prec. 1 V.I.C.). However, in looking after this moral obligation, certain natives and certain other persons of long residence in the islands were included. While Congress stretched its benignity, by inserting said section 2, there is nothing in either the report, remarks, or said provisions to indicate that they intended to extend rights to everybody who happen to be in the islands, or who happen to come in the islands in the future. (For a thorough discussion of this point see Opinion in William Allen Case, supra). As I said in the William Allen case, "I wish to emphasize, and keep in the forefront, the fact that the privilege of naturalization

273

of certain classes of persons was not extended on general principles, but was extended because of a (supposed) moral obligation. The legislation was not passed because it was thought on account of politics, or any other reasons, that citizenship should be extended to any of the inhabitants of these islands. This accentuates and entirely supports the view that I have taken — that aliens, in all inclusive sense of that word, were not in the mind's eye or in contemplation of the Committee of Congress. A contrary view, I repeat, would ascribe to Congress an ineptitude of expression such as I am not willing to ascribe to it, or concur in."

■ - ■ It has been intimated that this Act (February 25, 1927, supra) must be uniform with the general naturalization laws of the United States, otherwise it would fall afoul of the part of section 8, Article 1, of the Constitution of the United States (prec. 1 V.I.C.), which confers power upon Congress to "establish a uniform rule of naturalization . . . ." As I said in the William Allen case, supra, "It suffices to say, in answer to this, that that part of the Constitution does not extend to these islands and has not been so extended by Congress. The (U.S.) Circuit Court of Appeals (Third Circuit) in Soto v. United States (1 V.I. 536), 273 Fed. 628 (633) — a case arising in this jurisdiction — that this was not incorporated territory, and then went on to epitomize the decisions of the Supreme Court of the United States regarding the applicability of the Constitution to such territory . . .". It was held that only those parts of the Constitution that deal with natural rights are extended to such possessions, and the parts of the Constitution dealing with political rights are not extended. "The principle enunciated in the Insular Cases, supra, and in the Soto Case, supra, has been recently affirmed and followed in the case of Balzac v. Porto Rico. 258 U.S. 298, 42 S. Ct. 343, 66 L. Ed. 627. Certainly nobody at this late day will contend that the subject of

naturalization in any wise involves natural rights. It is purely an artificial or political right. Terrace v. Thompson, 263 U.S. 197, 44 S. Ct. 15, 68 L. Ed. 255; Petition of Connal, 8 F.2d 374. Hence, it must be held, that the portion of the Constitution regarding naturalization is inapplicable to this jurisdiction. See People v. Charles Bell. No. 10–1927, November 2, 1927 (D.C.V.I., St. Thomas Jurisdiction)." In re William Allen, supra.

Now, it seems to me — as I said in the William Allen Case — that assuming, for the sake of argument but denying it otherwise, that that part of the Constitution is in force in these islands — that this proves too much; that if this contention is correct, they are hoisted by their own petard, because this gives special rights to certain people of a particular portion of the country that are not extended to people of the balance of the country. These favored people are not sailors or soldiers or some other class that might spring up anywhere in the country, but the rights are given to people of a particular area, and, therefore, the Act offends against the rule of uniformity.

Since the rendering of the decision in said William Allen case (supra), the Bureau of Naturalization has called to my attention the case of United States v. Rodiek, 162 Fed. 469, decided by the (U.S.) Circuit Court of Appeals for the Ninth Circuit, on May 4, 1908. Rodiek, a native of Germany, had been living in the Hawaiian Islands since about ten years preceding the passage of the Organic Act, April 30th, 1900 (ch. 339, 31 Stat. 141; 48 U.S.C. § 491 et seq.), and, on March 28th, 1907, he presented his petition to the District Court of these islands, for naturalization. The Court, speaking through Circuit Judge Gilbert, said:

"The United States district attorney contested the petition on the ground that Act Cong. June 29, 1906, c. 3592, 34 Stat. 596 (U.S. Comp. St. Supp. 1907, p. 419 [8 U.S.C. former § 373; see 8 U.S.C. § 1445(f)]), requires that a

declaration of intention shall have been made two years before admission to citizenship. The District Court ruled that such declaration was rendered unnecessary by section 100 of the Organic Act (Act April 30, 1900, c. 339, 31 Stat. 161 [8 U.S.C. former §§ 385, 701 note]), and allowed the petition.

"The single question presented on the writ of error is whether the court below erred in so ruling. The Organic Act, providing for a government for the territory of Hawaii, declares, in Section 4, that all persons who were citizens of the republic of Hawaii on August 12, 1892, 'are hereby declared to be citizens of the United States and citizens of the territory of Hawaii'. In section 100 it provides:

" 'That for the purpose of naturalization under the laws of the United States, residence in the Hawaiian Islands prior to the taking effect of this act shall be deemed equivalent to residence in the United States and in the territory of Hawaii, and the requirement of a previous declaration of intention to become a citizen of the United States and to renounce former allegiance shall not apply to persons who have resided in said islands at least five years prior to the taking effect of this act.'

"The constitutionality of that section is questioned. The Constitution gives to Congress the power 'to establish a uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the United States.' Although Congress has the power and has exercised it to confer citizenship upon individuals by special acts, or upon acquiring territory formerly belonging to a foreign power to make its people citizens of the United States, or upon the admission of a territory to statehood to make citizens of the residents thereof, the Constitution requires that in adopting a rule of naturalization or a system of procedure, whereby applicants for citizenship may upon their own initiative and the judgment of a court obtain citizenship, the rule of procedure must be uniform throughout the United States.

276

Any special procedure prescribed for any particular district or territory in the United States would be obnoxious to this provision of the Constitution. The provision of the organic act above quoted would seem to be subject to that objection, for it applies only to residents of the territory of Hawaii and to the procedure local to the courts thereof."

▆ While the case (United States v. Rodiek, supra) was actually decided on another point, namely, that the Organic Act conflicted with the general naturalization act of 1906, and was therefore no longer effective, the Court clearly stated that it considered that the part of the Organic Act that is comparable to section 2 of the Act of February 25th, 1927 (supra), was obnoxious to that provision of the Constitution. This sustains my view as expressed in the William Allen case (supra). In the Rodiek case (supra) the Court assumed, apparently — as nothing was said on the subject, and I have not pursued it myself further — that the whole Constitution was in force in Hawaii. Such is not the case in this jurisdiction, as we have already seen. Therefore, it seems to me perfectly clear that from every viewpoint the petitioner cannot prevail.

The above is more or less a recapitulation of the opinion, as heretofore said, in the William Allen case, to which attention is called for a more thorough discussion of the subject. Notwithstanding what amounts to a reconsideration of the William Allen case, I cannot see that any mistake has been made, and, consequently, Mrs. Allen is no more entitled to naturalization than her husband was.

Petition has been, therefore, denied.