James E. LEBER, Appellant,

v.

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES and United States Department of the Interior.

No. 85–5166.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1985.

Decided Jan. 6, 1986.

Robert P. Ging, Jr., Lee R. Golden (argued), Pittsburgh, Pa., for appellant.

William F. Larkin (argued), Asst. Counsel, Pittsburgh, Pa., for Appellee Com. of Pa., Pa. Dept. of Environmental Resources.

Myles E. Flint, Acting Asst. Atty. Gen., Jacques B. Gelin, Alfred Ghiorzi, David C. Shilton (argued), Dept. of Justice, Washington, D.C., for appellee, U.S. Dept. of Interior.

Before HIGGINBOTHAM, SLOVITER and MANSMANN, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

**I.**

*Issue*

At issue is a matter of first impression regarding the scope of section 703 of the Surface Mining Control and Reclamation Act of 1977. The district court held that the provisions of that Act governing the employer-employee relationship were not applicable to state agencies, because the

state was not shown to be a "person." The Interior Board of Land Appeals has not always maintained a consistent interpretation of the relevant provisions, and apparently no other court has spoken to the issue.

## II.

### Procedural Background

James E. Leber, a Surface Mine Conservation and Reclamation Inspector for the Pennsylvania Department of Environmental Resources (DER), filed a complaint with the United States Department of the Interior, alleging that DER had discriminated against him in violation of section 703 of the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. § 1293, by retaliatory personnel actions against him because of his aggressive enforcement of the Act.[1] The matter was assigned to an administrative law judge.

DER moved to dismiss on the ground, *inter alia*, that it was not a "person" covered by the Act and thus its personnel decisions in regard to Leber were not within the jurisdiction of the Department of Interior. The ALJ denied DER's motion to dismiss and held a hearing on the merits.

The ALJ also denied DER's subsequent motion to certify the jurisdictional issue for interlocutory appeal to the Interior Board of Land Appeals (IBLA). DER then petitioned the IBLA, pursuant to 43 C.F.R. § 4.1272, for permission to pursue an appeal of the ALJ's interlocutory ruling on jurisdiction.

The IBLA granted the petition, and ruled that DER "is not a person for purposes of an employee protection proceeding under 30 U.S.C. § 1293 (1982)" because it had not been shown to be an employer "conducting operations which are regulated under [the] Act." On remand, the ALJ dismissed the case. Leber's petition for reconsideration to enable him to demonstrate that DER is engaged in coal mining and thus subject to the Act was denied by the IBLA.

Plaintiff petitioned for review in the United States District Court for the Middle District of Pennsylvania pursuant to 30 U.S.C. § 1276. After directing that the Department of the Interior be joined as an additional respondent, the district court upheld the IBLA's ruling. Plaintiff has appealed the district court's denial of his petition for review.[2]

---

**1.** Leber's allegations of DER discriminatory actions, as summarized in his later application for temporary relief, included increasing his work hours in excess of state regulations, transferring him, having his gun permit revoked, threatening discharge, withholding and downgrading his performance evaluations, requiring overtime work without compensation, and harassing, cajoling and reprimanding him for the performance of his job. App. at 5–7.

**2.** The allegations raised in this case (*Leber I*) also were the basis for the following other actions:

1. Leber brought a similar proceeding arising out of the same facts against seven supervisory employees of DER. The ALJ ruled that DER had engaged in surface coal mining. However, the IBLA ruled that a state agency, even if engaged in surface coal mining operations, was not subject to a § 703 suit by an employee, Leber v. Sterling (*Leber II*), 88 IBLA 224, 234–35, 238 n. 7 (1985). Therefore, it declined to reach the issue whether DER was engaged in surface coal mining, *id.* at 229–30 n. 4.

2. Shortly after *Leber II* was filed, the Department of Interior began an investigation of

Leber's charges of discrimination. The DER employees named in *Leber II* sought an injunction to halt the investigation. Sterling v. Clark, Civ. No. 84–0500 (M.D.Pa.). The district court issued a temporary restraining order but, after the Department of Interior dropped its investigation pursuant to *Leber I*, the court dismissed the motion for a preliminary injunction as moot.

3. Leber appealed from his 5-day suspension in 1982 for carrying a firearm while on duty to the Pennsylvania State Civil Service Commission, which affirmed his suspension. Leber v. Bureau of Mining and Reclamation, Department of Environmental Resources, Appeal No. 4324 (Pa. Civil Service Comm., July 6, 1983).

4. Leber also appealed his January 30, 1984 Performance Evaluation Report, his assessments of absence without leave, and his four suspensions from his position as Inspector to the Pennsylvania State Civil Service Commission, which upheld all but one of these actions. Leber v. Department of Environmental Resources, Appeal No. 4856 (Pa. Civil Service Comm., Jan. 30, 1985).

5. Leber also filed a complaint with the Pennsylvania Human Relations Commission,

The issue before us involves a question of law, as to which our review is plenary.

## III.

### Statutory and Regulatory Background

Congress passed the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. §§ 1201–1328 (1982), expressing in the statute the dual purposes, *inter alia*, "to protect society and the environment from the adverse effects of surface coal mining operations" while still "assur[ing] that the coal supply essential to the Nation's energy requirements ... is provided." 30 U.S.C. § 1202(a) and (f).

The statute provides for the comprehensive control and regulation of surface coal mine operations. It withstood various constitutional challenges in *Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), and *Hodel v. Indiana*, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981).

Title II places the primary responsibility for the Act's administration and enforcement in the Secretary of the Interior, acting through the Office of Surface Mining Reclamation and Enforcement, who is authorized and directed to promulgate the regulations necessary to its implementation. 30 U.S.C. § 1211. Title IV of the Act covers abandoned mine reclamations, Title VI covers designation of lands unsuitable for noncoal mining, and Titles III, VIII and IX deal with aspects of research.

Title V contains the principal regulatory and enforcement provisions relating to surface coal mining. It establishes federal performance standards which must be satisfied in two stages, an interim phase and thereafter a permanent phase. In line with the cooperative federalism that characterizes much recent legislation, the Act contemplates enforcement roles by both the federal government and the states. The Secretary has the obligation to promulgate the interim phase regulations, with the state issuing permits pursuant to those interim regulations. If the Secretary approves the state's proposed permanent program, the state is to assume permanent regulatory authority over much of the surface mining operations within its borders. 30 U.S.C. §§ 1252(a)–(b) and 1253.

A discrete provision covers surface coal mining operations conducted by public agencies, whether federal, state, or local. Section 524 provides:

> Any agency, unit or instrumentality of Federal, State, or local government, including any publicly owned utility or publicly owned corporation of Federal, State, or local government, which proposes to engage in surface coal mining operations which are subject to the requirements of this chapter shall comply with the provisions of this subchapter.

30 U.S.C. § 1274.

Title VII contains administrative and miscellaneous provisions. Section 703 offers protection to "whistle blowing" employees. It reads, in pertinent part, as follows:

> No *person* shall discharge, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

30 U.S.C. § 1293(a) (emphasis added). On application of an employee, the Secretary of the Interior must investigate such alleged discrimination and, after finding a violation of section 703(a), may order the

---

Leber v. Commonwealth of Pennsylvania, Department of Environmental Resources, Bureau of Mining & Reclamation, No. E–25849–D, and the EEOC, EEOC031833647, alleging harassment by supervisor Dieterle on basis of his ancestry (German). The Pennsylvania HRC dismissed the complaint for lack of probable cause that discrimination occurred. The EEOC found no reasonable cause to believe a violation of Title VII occurred and issued a right to sue letter.

violator to take "affirmative action to abate the violation." 30 U.S.C. § 1293(b).

Section 701(19) of the Act defines "person" as "an individual, partnership, association, society, joint stock company, firm, company, corporation, or other business organization." 30 U.S.C. § 1291(19). The initial regulations promulgated pursuant to SMCRA defined "person" in the same manner. *See* 30 C.F.R. § 700.5 (1978). On the face of the statute and the initial regulations, a state governmental agency, such as DER, would not be a "person" liable under section 703 for discrimination against an employee who sought to enforce the Act.

Leber, whose suit is filed under section 703, concedes that the state is not a "person" under the Act. He argues, however, that an amendment to the regulations in 1979 changing the definition of "person" sufficed to expand the scope of section 703 to cover states and state agencies as employers. The amended regulation reads as follows:

> *Person* means an individual, Indian tribe when conducting surface coal mining and reclamation operations on non-Indian lands, partnerships, association, society, joint venture, joint stock company, firm, company, corporation, cooperative or other business organization and any agency, unit, or *instrumentality of Federal, State or local government* including any publicly owned utility or publicly owned corporation of Federal[,] State or local government.

30 C.F.R. § 700.5 (1980) (second emphasis added).

As originally proposed, this regulation would have limited "person" as applied to government agencies to only those government agencies proposing to conduct surface mining operations. This limitation was deleted before the regulation became final. It is Leber's position that because this regulation was within the statutory authority given to the Secretary to promulgate implementing regulations, its effect is to bring governmental agencies, including DER, within the scope of SMCRA for all purposes and, specifically in this case, within the scope of section 703.

The Office of Surface Mining (OSM) gave a different explanation for "amplifying" the definition of "person" in section 701(19) of the Act to include governmental agencies. Because its explanation is highly significant to the issue before us, we quote it at length:

> *... In addition, specified governmental agencies are included, because under Section 524 of the Act, they are subject to regulation when engaged in surface coal mining and reclamation operations and because such agencies have definite interests in actions taken under the Act.* (See discussion under Paragraph 3 below.)...
>
> 1. The Office received several comments which argued that the definition of "person" exceeds OSM's statutory authority because it is not identical to Section 701(19) of the Act. OSM is not required to adopt verbatim the statutory definitions in regulations implementing the Act. Section 201(c)(2) of the Act authorizes regulations which will carry out the purposes and objectives of the Act.
>
> .   .   .   .   .
>
> 3. *The final definition of "person" has been changed from the proposed rule so as to delete the limitation that only government agencies proposing to conduct surface coal mining operations would be covered.* A number of State government and industry commenters criticized the proposed definition of "person" on the basis that since it amplifies the statutory definition it would allow government agencies to sue other government agencies and also allow agencies to become involved in the hearing processes under the Act. Commenters felt that this would subject the regulatory authority to restrictions not imposed by the Act and subject it to liabilities never contemplated by Congress. It was further felt that the definition would provide particular problems in and among various State agencies by providing legal standing that currently does not exist and was not intended to exist under the Act.

It is true that a potential for interstate or intrastate conflict exists where the genuine interests of separate agencies may be involved. To a great extent however, the commenters' fears are unwarranted since the regulations allow appeals and suits only for persons "who are or may be adversely affected." (See, *e.g.*, 30 CFR 760.4(d), 764.13(a).) On balance, OSM has concluded that the purposes of the Act will be best served if the statutory definition is broadened to include governmental entities.

*The Act mandates the involvement of and close coordination among many different agencies.* Various agencies play important roles in the abandoned land's program in Title IV of the Act, in the regulatory process in terms of providing data, permit application reviews, performance standards compliance, and in designation of lands unsuitable for all or certain types of surface coal mining operation. (See Sections 503(a)(6), 504(b), 507(b)(11), 508(a)(9), 510(b)(3), 510(c), 515(b)(2)(8), 515(b)(10)(B), 515(b)(12), 515(c), 515(e) and 522 of the Act. See also the detailed discussion in the preamble to 30 CFR 786.11(c)(1)–(4), *infra.*)

*OSM believes the involvement of other State and local agencies, which the Act specifies, establishes an interest on the part of those agencies in actions taken by the regulatory authority under State programs, particularly actions relating to permits and designations.* Therefore, OSM believes that inclusion of the government agencies in the definition of "person" is justified. *OSM does not intend by this to expand upon an agency's capacity to sue or be sued where the Act does not clearly indicate that the agency has an interest in the actions being taken.* In such situations, existing principles of State or Federal law would govern.

44 Fed.Reg. 14912 (1979) (emphasis added).

## IV.

### Discussion

As an initial matter, we must consider whether there is any statutory limitation on our jurisdiction over this issue. Leber argues that if DER believes the regulation is improper, it was required to file an action in the United States District Court for the District of Columbia Circuit, as provided in 30 U.S.C. § 1276(a)(1). Leber misstates DER's position. DER does not challenge the regulation's legality, but only Leber's interpretation of it. That issue is properly before us.

Turning then to the statutory language, it is clear that the omission of "state" or "state agency" from the statutory definition of "person" was not inadvertent. The same definitional section defines "State," "State program," and "State regulatory authority." 30 U.S.C. § 1291(24)–(26). Under accepted rules of statutory construction, "[a] definition which declares what a term 'means' . . . excludes any meaning that is not stated." *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979) (citing 2A C. Sands, Statutes and Statutory Construction § 47.07 (4th ed. Supp.1978)). Thus the statutory list of terms defining "person" is exclusive rather than exemplary.

The omission of states and state agencies from the SMCRA's statutory definition of "persons" does not exempt those agencies that engage in coal mining operations from the Act's performance requirements. As noted in the preceding discussion, section 524 of the Act treats governmental agencies engaging in surface coal mining activities comparably to those of private companies. In those circumstances, the governmental agency is required to "comply with the provisions of this subchapter [Title V]", 30 U.S.C. § 1274. However, section 524 does not subject the government agency, even if engaged in surface coal mining activities, to section 703, the "whistle-blowing" provision.

Leber argues that the amendatory regulation covers state agencies even when they are not conducting surface mining operations because of the deletion of the proposed limitation that would have defined as

"persons" only those government agencies proposing to conduct surface mining operations. Alternately, he contends that if proof of DER's participation in surface mining is necessary to establish that it is a "person" within the meaning of § 703, the case should be remanded to allow him the opportunity to present proof on that issue because he was not previously on notice that such evidence would be required.

If Leber's construction of the regulation and its effect were persuasive, it would draw into issue the principle that regulations cannot expand the reach of the underlying statute. *See Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 212–14, 96 S.Ct. 1375, 1390–91, 47 L.Ed.2d 668 (1976); *Max Sobel Wholesale Liquors v. Commissioner of Internal Revenue*, 630 F.2d 670, 672 (9th Cir.1980). That might indeed be an issue within the exclusive province of the federal courts for the District of Columbia under 30 U.S.C. § 1276(a)(1). We conclude, however, that Leber's proposed construction does not withstand analysis.

The inference Leber would have us draw from the amended regulation is belied by OSM's contemporaneous comments. That agency explained that because various government agencies played important roles in various aspects of the Act, they were being included as "persons" to permit their involvement "in actions taken by the regulatory authority under State programs, particularly actions relating to permits and designations." 44 Fed.Reg. 14912 (1979). The ambiguity of that explanation was clarified somewhat by a post-argument submission by counsel for the government, requested by the court. He offered the following example of how the expanded definition of person might work in a particular situation:

Section 764.13 of Title 30 of the Code of Federal Regulations provides in part that, "[a]ny person having an interest which is or may be adversely affected has the right to petition the regulatory authority to have an area designated as unsuitable for surface coal mining operations, or to have an existing determination terminated." It appears that the definition of "persons" was expanded so that the various federal[,] state and local agencies which are implicated by the Act could participate in proceedings like that described in 30 C.F.R. 764.13.

Letter from David Shilton, Counsel for the Department of the Interior, to the Court (November 20, 1985).

Mr. Shilton's letter also stated that the reference in the preamble to the 1979 regulations to the "definite interests [of specified governmental agencies] in actions taken under the Act", 44 Fed.Reg. 14912, applies, *inter alia*, to "the abandoned lands program of Title IV of the Act, 30 U.S.C. 1231–1243, under which states may receive funds for reclamation purposes (30 U.S.C. 1231), and may administer reclamation programs (30 U.S.C. 1235); and the provisions for designating areas unsuitable for surface coal mining found in Section 522, 30 U.S.C. 1272, under which states play the primary regulatory role."

The IBLA, the ultimate agency reviewing authority for actions taken under SMCRA, found that "the statutory definition of a 'person' does not embrace a governmental agency", *Leber v. Pennsylvania Department of Environmental Resources*, 80 IBLA 200, 204 (1985), and "that the definition of person was expanded [by the regulations] for only limited purposes" which do not include "an employee protection proceeding under 30 U.S.C. § 1293," *id.* at 206. It concluded:

Clearly, the intent of the regulations was to consider an agency, such as PDER, a "person" to the extent it might be conducting surface coal mining operations under the Act or to the extent it might be involved in those functions highlighted in the preamble, *i.e.*, abandoned lands program, the regulatory process in terms of providing data, permit application review, performance standards compliance, and

designation of lands unsuitable for all or certain types of surface coal mining operations.

There is no indication that the Department intended to create a new forum whereby state employees could seek review of actions taken by the state with regard to state employment practices. *Id.* (citations and footnotes omitted).

Ordinarily, a court will defer to an agency's interpretation of its own regulations unless an agency exceeds its statutory authority or inconsistently construes a statute. *Morrison-Knudsen v. Director, OWCP,* 461 U.S. at 635, 103 S.Ct. at 2051; *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). *See Ernst & Ernst v. Hochfelder,* 425 U.S. at 198–201, 96 S.Ct. at 1383–1384. *See also* 5 K. Davis, Administrative Law Treatise § 29:16 (1984). In this case, deference to the agency's interpretation may be particularly relevant because it was the agency's action in redefining "person" in the regulation that forms the principal basis for plaintiff's proffered interpretation of "person".

Even if the scope of the regulation redefining "persons" is still less than pellucid, we are satisfied that the regulation was not intended to expand section 703 to states or state agencies by OSM's own statement that "OSM does not intend by this to expand upon an agency's capacity to sue or be sued where the Act does not clearly indicate that the agency has an interest in the actions being taken." 44 Fed.Reg. 14912.

For these reasons, we reject Leber's contention that the regulation brings state agencies within the definition of "person" for purposes of an employee discrimination suit brought under section 703 without reference to whether the agency is engaged in surface mining operations.

In *Leber I,* the IBLA suggested that DER would be a "person" within the meaning of section 703 if it was shown to participate in surface mining. The district court

accepted this statutory interpretation. The court further held that since the issue was jurisdictional, Leber had the burden of producing the relevant evidence of DER's mining activity. On appeal Leber argues that the district court and the IBLA erred in failing to remand to allow him the opportunity to present proof on that issue because he was not previously on notice that such evidence would be required.

While this case was on appeal, the IBLA issued its opinion in *Leber II* in which it concluded, consistent with its ruling in *Leber I,* that DER is not a "person" for purposes of a section 703 employee protection proceeding. *Leber v. Sterling,* 88 IBLA 224 (1985). After reviewing the relevant statutory provisions and regulations, it also "expressly modif[ied] our decision in [*Leber I* ] to the extent that it indicated a state agency engaged in coal mining operations could be subject to a section 703 employee protection proceeding." *Id.* at 239. We agree that since the statute does not make the state a "person" for purposes of section 703 of the Act, and the regulation does not purport to expand the statute for that purpose, it is irrelevant in this case whether DER is or was engaging in surface mining operations. Therefore, there is no need for a remand to produce evidence on that issue.[3]

## V.

### *Conclusion*

We summarize our conclusions as to the coverage of states and state agencies. A state proposing to engage in surface mining operations is covered by Title V of the SMCRA under the explicit provision of section 524. *See* 30 U.S.C. § 1274. The regulation amended in 1979 to provide that the term "person" also means "any agency, unit, or instrumentality of Federal, State or local government." 30 C.F.R. § 700.5 (1980), had the limited purpose of allowing state agencies to become involved in cer-

---

**3.** Because we agree that a state agency is not a "person" under § 703 of SMCRA, we do not reach DER's remaining arguments founded on

collateral estoppel, and the Tenth and Eleventh Amendments.

tain regulatory proceedings and was not intended to subject state agencies to section 703 employee protection proceedings, even were that within the permissible scope of regulatory action. Therefore, the district court's action in denying Leber's petition for review from the IBLA's action in dismissing his section 703 proceeding against DER was not error.

As we pointed out in note 2 *supra,* Leber has had and availed himself of the opportunity to have the merits of his claim evaluated by the appropriate state and federal authorities. However, the route that he sought in this case was not authorized by statute. Therefore, we will affirm the district court's judgment.