

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-29-1999

# Wilson v. US Parole Comm.

Precedential or Non-Precedential:

Docket 98-7452

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Wilson v. US Parole Comm." (1999). *1999 Decisions.* Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7452

EDWIN P. WILSON,
        Appellant

v.

UNITED STATES PAROLE COMMISSION;
J.T. HOLLAND, Warden

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 97-cv-00953)
District Judge: Honorable William J. Nealon

Submitted Under Third Circuit LAR 34.1(a)
on June 11, 1999

Before: MANSMANN, RENDELL and STAPLETON, Circuit
Judges.

(Filed September 29, 1999)

        Edwin P. Wilson, Pro Se
        No. 08237-054
        U.S.P. Allenwood
        P.O. Box 3000
        White Deer, PA 17887

         Appellant

        David M. Barasch
         United States Attorney
        Larry B. Selkowitz
         Assistant U.S. Attorney
        228 Walnut Street
        Harrisburg, PA 17108-1754

        Counsel for Appellees

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal arises from the denial of a petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. 2241. The petitioner, Edwin P. Wilson, a federal prisoner, attempted to contract for the murders of several people while he was in federal custody, but prior to the date on which the penitentiary received him for service of his sentence. He alleges that the United States Parole Commission violated its own rules when it applied the rescission guidelines of 28 C.F.R. 2.36 to his conduct, when the regulation's plain language applies only to "disciplinary infractions or new criminal behavior committed by a prisoner subsequent to the commencement of his sentence." The district court held that the Parole Commission's interpretation of its own guidelines was reasonable because Wilson was in federal custody awaiting trial on another indictment at the time of the new criminal behavior and denied the petition for a writ of habeas corpus. Since, however, the same Parole Commission regulations at 28 C.F.R. 2.10 define sentence commencement as "the date on which the person is received at the penitentiary . . . ," we find that the Parole Commission contravened its regulation to which it is bound. We will reverse.

I.

As of June 23, 1997, when Wilson filed the petition for a writ of habeas corpus now before the court, he had been confined for almost 14 years and incarcerated in the United

2

States Penitentiary at Allenwood, in White Deer, Pennsylvania, serving a 52-year aggregate federal sentence.

In 1982, the U.S. District Court for the Eastern District of Virginia sentenced Wilson to 15 years (later modified to 10), for transportation of firearms in interstate commerce with intent to commit a felony. According to the Presentence Investigation Reports, in 1979, Wilson had conspired to export four revolvers and supply them to a Libyan intelligence officer. One of the revolvers was used to murder a Libyan dissident.

In 1983, the U.S. District Court for the Southern District of Texas sentenced Wilson to a 17-year term, to run consecutively to the Virginia sentence, for conspiracy to violate the Arms Export Control Act, fraudulent statements, violations of the Munitions Control Act, and unlawful transportation of hazardous material. Wilson had conspired in 1977 to import 20 tons of C-4 plastic explosives into Libya. These explosives were used, in part, to train terrorists.

Finally, in the fall of 1983, the United States District Court for the Southern District of New York sentenced Wilson to a 25-year consecutive sentence for attempted murder, criminal solicitation, obstruction of justice, tampering with witnesses, and retaliating against witnesses. Wilson had been charged with arranging for the contract murder of eight people, including making a cash payment delivered by his son, to a person whom he believed to be a hitman, but who was actually an FBI agent. All of this was committed while Wilson was awaiting trial or sentencing on the other charges, and continued after the United States District Court for the Eastern District of Virginia sentenced him in 1982. Although during this time Wilson was in federal custody, he had not yet been received at a federal prison under a judgment of sentence.

In 1992, the Parole Commission denied Wilson parole and rated Wilson's Virginia and Texas offenses as Category Eight severity. Combined with Wilson's salient factor score of ten points, the parole guideline range equaled 100+ months. 28 C.F.R.  2.20. Next, the Parole Commission

considered criminal conduct committed while Wilson was in federal custody, before and after sentencing in Virginia. The Commission rated this conduct under the rescission guidelines, applicable to "new criminal behavior committed by a prisoner subsequent to the commencement of his sentence and prior to his release on parole." 28 C.F.R. 2.36 (a).

The Parole Commission rated the rescission conduct as Category Eight severity, finding that it constituted conspiracy to commit murder, and recalculated Wilson's salient factor score as if he had committed new crimes while on parole, producing six points. Thus, the Parole Commission, following the rescission guidelines, added 120+ months to the original 100+ months, more than doubling Wilson's aggregate guideline range to 220+ months. The National Appeals Board affirmed on administrative appeal. The Parole Commission scheduled a reconsideration hearing for October, 2007.

On August 8, 1996, the Parole Commission held a statutory interim hearing, and the case was again referred to the National Commission, which maintained the previous order. The National Appeals Board affirmed this decision, issuing a final notice of action on August 1, 1997, confirming the use of the rescission guidelines.

Having exhausted his administrative remedies, Wilson filed a petition for a writ of habeas corpus in the U. S. District Court for the Middle District of Pennsylvania, alleging that the Commission applied its rescission guidelines in an arbitrary and capricious manner in extending his parole eligibility date. The district court denied the petition.

Wilson filed a timely notice of appeal on July 30, 1998. We have jurisdiction over this appeal pursuant to 28 U.S.C. 1291. In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions. See Jones v. Lilly, 37 F.3d 964, 967 (3d Cir. 1994). Generally, federal courts defer to Parole Commission's decisions. See Zannino v. Arnold, 531 F.2d 687, 690-91 (3d Cir. 1976). When reviewing a Parole Commission decision, however, we must determine whether the Commission "has followed

4

criteria appropriate, rational and consistent with its enabling statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations." Id. at 690.

II.

The central question before us is whether Wilson's criminal conduct triggers the application of the rescission guidelines, thus prolonging incarceration before parole eligibility. Our starting point on any question concerning the application of a regulation is its particular written text. See generally Sutherland, Statutory Construction   45 – 47 (5th ed.)(1991). 28 C.F.R.  2.36 provides:

> 2.36 Rescission guidelines.
>
>  (a) The following guidelines shall apply to the sanctioning of disciplinary infractions or new criminal behavior committed by a prisoner subsequent to the commencement of his sentence and prior to his release on parole. These guidelines specify the customary time to be served for such behavior which shall be added to the time required by the original presumptive or effective date. Credit shall be given towards service of these guidelines for any time spent in custody on a new offense that has not been credited towards service of the original presumptive or effective date . . . (emphasis added).

A statute, clear and unambiguous on its face, will not be interpreted by a court; only statutes which are of doubtful meaning are subject to the process of statutory interpretation. Hamilton v. Rathbone, 175 U.S. 414 (1899). We must give the natural and customary meaning to the words, and if that is plain, our sole function is to enforce it according to its terms. Caminetti v. United States, 242 U.S. 470, 485 (1917), United Pacific Nat. Cellular v. United States, 41 Fed. Cl. 20, 26–27 (1998).

The meaning of the pertinent part of section 2.36 is clear and unambiguous. "New criminal behavior" necessarily distinguishes the criminal behavior which activates the rescission guidelines from the "old" criminal behavior,

5

which is the crime underlying the incarceration; "committed by a prisoner," that is, done by one in prison, "subsequent to," after, "the commencement of his sentence." Not only is "the commencement of his sentence" clear to us on its face, but another section of the same regulations, 28 C.F.R. 2.10, specifically defines "service of a sentence" in accord with common usage:

> 2.10 Date service of sentence commences.
>
> (a) Service of a sentence of imprisonment commences to run on the date on which the person is received at the penitentiary, reformatory, or jail for service of the sentence: Provided, however, that any such person shall be allowed credit toward the service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. (emphasis added).

As a rule, a definition which declares what a term means is binding, National City Lines, Inc. v. LLC Corp ., 687 F.2d 1122 (8th Cir. 1982), and "[a] definition which declares what a term `means' . . . excludes any meaning that is not stated." Colautti v. Franklin, 439 U.S. 379, 392 – 393 (1978), citing 2A C. Sands, Statutes and Statutory Construction 47.07 (4th ed., Supp. 1978), See Leber v. Pennsylvania Dep't of Envtl. Resources, 780 F.2d 372, 376 (3d Cir. 1986).

We also note that Congress's criminal procedure provisions provided the identical definition of commencement of sentence at 18 U.S.C. 3568 (applicable to Wilson's sentence though now superseded by section 3585) which reads in pertinent part:

> 3568. Effective date of sentence; credit for time in custody prior to the imposition of sentence
>
> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed....

6

Because the Parole Commission's interpretation conflicts with Congress's description of the commencement of a sentence in section 3568, it must be rejected on those grounds as well. See Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980) (agency's interpretation of the statute cannot supersede Congress's chosen language).

The last act in Wilson's criminal conduct was on February 10, 1983, when the F.B.I. agent posing as a hitman met with Wilson's son. Between Wilson's subsequent arrest and trial in New York, Wilson was sentenced in the Texas case and tried and acquitted on other charges in the District of Columbia. He was tried in New York on the attempted murder charges, among others, and sentenced on November 9, 1983. The following day, November 10, 1983, Wilson was delivered to the United States Penitentiary at Marion, Illinois, to serve his sentence.

The commencement of Wilson's sentence was, thus, November 10, 1983, when he was committed to the Marion Penitentiary; all other definitions of the commencement of Wilson's sentence are excluded.

Exclusion of other definitions of "commencement of sentence" is not only required by the plain language but also by the regulation taken as a whole. Regulation 2.36 cautiously circumscribes the subject time period: time served at the prison between arrival at the prison and release on parole. Further, the regulation provides that "[c]redit shall be given towards service of these guidelines for any time spent in custody on a new offense," also differentiating the time serving the sentence in prison from "time spent in custody on a new offense."

III.

The Parole Commission determined that Wilson's sentence commenced to run when he was first received into federal custody. The District Court agreed, asserting that "[t]he Commission's interpretation of its own guidelines as to when a sentence commences to run for the purpose of determining when an offense was committed is entitled to deference."

7

We find that the Parole Commission's interpretation is entitled to no deference as to the narrow question of when a sentence commences to run; the plain language of the regulation controls. Although courts often substantially defer to an agency's construction of its own regulations, Martin v. Occupational Safety & Health Review Comm'n , 499 U.S. 144, 150, 111 S. Ct. 1171, 1175 – 1176, 113 L. Ed.2d. 117 (1991), and the Parole Commission enjoys a great deal of deference as to decisions regarding whether to grant parole to a particular individual, only where the meaning of a regulation is ambiguous should the reviewing court give effect to the agency's "reasonable interpretation," i.e., an interpretation which "sensibly conforms to the purpose and wording of the regulation . . . ." Id., 499 U.S. at 151, 111 S. Ct. At 1176, (quoting Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of Am., 423 U.S. 12, 15, 96 S. Ct. 172, 173, 46 L. Ed.2d 156 (1975)).

Here, no deference is warranted because the Parole Commission's interpretation is inconsistent with the wording of the regulation. See id., 499 U.S. at 158. The administering agency's interpretation of a provision becomes relevant only if neither the plain meaning nor the legislative history determine interpretation of the provision, Stanley Work v. Snydergeneral Corp, 781 F.Supp. 659, 663 (E.D.Ca. 1990). We defer only where an agency's interpretation sensibly conforms to the purpose and the wording of the regulation.1 Martin, 499 U.S. at 151 (1991).

_____

1. We recognize that the district court concluded that the Parole Commission's interpretation is reasonable:

    The Commission's interpretation is reasonable in that, for rescission
        guidelines purposes, it would make little sense to differentiate
        between a sentenced prisoner, who was in federal custody awaiting
        trial on another indictment, from one who was not faced with
        another indictment and had begun serving his sentence at a
        designated prison.

This conclusion cannot stand where the Parole Commission's interpretation contravenes the regulation's plain language. Indeed, we have previously rejected just such an equation between federal custody and commencement of a sentence. In Gambino v. Morris, 134 F.3d 156

The Parole Commission must determine that new
criminal conduct occurred within the time circumscribed by
the rescission guidelines before applying those rescission
guidelines to a prisoner's parole eligibility date.
Fundamentally, the Parole Commission must follow its own
regulations, which have the force of law. United States ex
rel Farese v. Luther, 953 F.2d 49, 52 (3d Cir. 1992),
Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988).
Wilson's criminal conduct, including his attempt to contract
for eight murders while he was in federal custody, occurred
prior to the "commencement of his sentence." Faced with
the facts before it, the Parole Commission should not have
concluded that Wilson's sentence "commenced" earlier
while he was in federal custody. We conclude that the
district court erred in finding the rescission guidelines
applicable to Wilson's parole eligibility calculation.

IV.

Therefore, we will vacate the district court's judgment
and remand the case with directions to the Parole
Commission to recalculate Wilson's parole eligibility date.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

(3d Cir. 1998), Ernesto Gambino, a notorious member of an organized
crime family, attempted to escape from secure custody, and the Parole
Commission added additional time before his eligibility for parole.
Though the Parole Commission did not indicate under which provision of
the regulations Gambino's additional penalty was assessed, we
concluded that, on the regulation's face, the rescission guidelines could
not apply, inasmuch as the attempted escape was prior to the verdict
and thus, necessarily, prior to the commencement of Gambino's
sentence. Id. at 158 and fn. 4. Plainly, the regulation does distinguish
between a sentenced prisoner in federal custody and one who has begun
serving his sentence at a designated prison.

9