

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-2008

# Ford v. Panasonic Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ford v. Panasonic Corp" (2008). *2008 Decisions*. Paper 925.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/925

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 07-2513

———

JASON FORD,
on behalf of himself
and all others similarly situated,
Appellant
v.

PANASONIC CORPORATION OF NORTH AMERICA;
PANASONIC AVC NETWORKS COMPANY OF AMERICA;
PANASONIC AVC NETWORK DE BAJA CALIFORNIA S.A. DE C.V.;
DOES 1 THROUGH 20

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-04958)
District Judge: Hon. John C. Lifland

———

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2008

Before:  SLOVITER, BARRY, and ROTH, Circuit Judges

(Filed: July 1, 2008)

———

OPINION

———

SLOVITER, Circuit Judge.

Appellant Jason Ford brought a consumer class action under state law consumer protection laws against Panasonic Corporation of North America and others ("Panasonic" collectively) alleging that Panasonic manufactured, marketed, and sold flat screen plasma television models as High Definition Televisions ("HDTVs") when they were not in fact HDTVs, which, according to the complaint, resulted in consumers paying thousands of dollars more than they would have otherwise paid.

**I.**

HDTV is a digital format for broadcasting and displaying television programs. HDTV signals are sent in a 16:9 image aspect ratio, which is meant to mimic the wide screen format and image detail of the cinema. HDTV comes in two different types of resolutions – 1080i and 720p – and the major television networks broadcast in both. There are two basic components to the HDTV resolution, that is, the television must be able to receive an HDTV signal and the television must be able to display the signal in a high quality image. The latter component is at issue in this case.

Panasonic filed a motion to dismiss; the District Court converted it to a motion for summary judgment to "give both sides the opportunity to present what I know is readily available, namely, expert testimony on these issues and I mean the issues that are technical in nature." Ford App. at 58. The parties each retained an industry expert to consider whether the Panasonic televisions at issue satisfy the industry standard for being designated HDTV, and the experts submitted their written opinions. For purposes of

2

summary judgment, neither party questioned the qualifications of the other's expert. The District Court granted Panasonic's motion for summary judgment.

The Court concluded that there were no disputed issues of material fact; the only disputed issue was a legal one, namely, what was the proper interpretation of the Consumer Electronics Association ("CEA") guidelines, which is the industry standard for HDTV designation. Even though the Court allowed expert testimony, it ultimately decided that resolving the conflicting expert testimony was unnecessary because the opinions expressed by the experts did not reflect disagreement about material facts, but rather a disagreement over a legal interpretation. Rather than relying upon either expert's conclusion, the District Court interpreted the language of the CEA, and found it clear on its face that the phrase "capable of displaying a 16:9 image" refers to the physical shape of the television rather than anything having to do with pixels. There was no dispute that the relevant Panasonic televisions had a screen size of sixteen horizontal units and nine vertical units. The Court noted that although it did not rely heavily on them, certain Consumer Reports articles bolstered its conclusion.

Ford timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We have plenary review of the District Court's grant of summary judgment. Sanford v. Stiles, 456 F.3d 298, 303 n.3 (3d Cir. 2006). We will affirm a grant of summary judgment if there are no issues of disputed

3

material fact and the moving party is entitled to judgment as a matter of law. Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005).

**III.**

The parties agree that the CEA guidelines defining HDTV receivers control the question whether Panasonic violated the state consumer protection laws. The CEA is the preeminent trade association in the electronics industry with the stated purpose of providing manufacturers and retailers with clear guidelines for advertising digital television products to consumers. Television manufacturers have agreed to abide by the CEA guidelines. There are no other competing or conflicting guidelines within the industry.

The CEA defines HDTV as "[t]he best quality digital picture, widescreen (16x9) display with at least 720 progressively scanned lines (720p) or 1080 interlaced lines (1080i) and Dolby digital surround sound." Panasonic App. at 46. The CEA definition of HDTV does not include any reference to pixels.

Ford argues that the District Court erred in granting summary judgment to Panasonic because each party's expert submitted conflicting reports of their different interpretations of the meaning of the CEA guidelines. Specifically, Ford claims the following four issues are disputed and material facts: "(1) [w]hether Panasonic plasma televisions purchased by Plaintiff and other members of the class are capable of displaying a 16:9 image as required by the industry standard for HDTV established by the CEA; (2) [w]hether pixels are relevant to the industry standard for HDTV and the 16:9

4

image requirement; (3) [w]hether the 16:9 image aspect ratio is the same as or distinct from a physical television screen measuring 16 units wide by 9 units high; and (4) [w]hether the televisions at issue are HDTVs." Appellant's Br. at 19. Ford states that "[w]ith respect to these material issues, the parties' respective experts reached polar opposite conclusions (PA 129-135; PA 223-248; PA 266-268), thus making summary judgment inappropriate." Appellant's Br. at 19.

We are not convinced. Although summary judgment is inappropriate where issues of material fact are disputed by experts, see Fed. Labs., Inc. v. Barringer Research Ltd., 696 F.2d 271, 275 (3d Cir. 1982), the disputed issues in this case were issues of legal interpretation, not of facts, as the District Court ably recognized. That each of the disputed issues listed above has been framed as a disputed issue of fact does not necessarily make it so. The Court acknowledged that if the qualified experts had disputed operative facts that controlled the outcome of the case it would have been "forced to deny summary judgment." Ford App. at 89. But the Court stated that "what we have here is a dispute between well qualified experts as to the meaning of a few words in the Consumer Electronics Association guidelines." Ford App. at 89-90.

Therefore, the Court undertook to determine whether there was any ambiguity in the CEA guidelines, in which case there may have been a colorable factual dispute for the experts to resolve, or whether the language at issue was subject to only one reasonable interpretation, in which case summary judgment would be proper. Cf. Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999) (stating that

summary judgment can be granted on issue of contract interpretation if contractual language "is subject to only one reasonable interpretation"); Wilson v. U.S. Parole Comm'n, 193 F.3d 195, 198 (3d Cir. 1999) (explaining that when statute is clear and unambiguous on its face, a court must give it its plain and ordinary meaning and "enforce it according to its terms").

We find no error with the District Court's analysis. The Court first resolved that the CEA guidelines were the operative standard, because they formed the basis of Ford's complaint, and both parties agreed that they controlled. The Court then analyzed whether there was a disputed issue of fact with respect to the meaning of the guidelines. It concluded that there was not, because the guidelines were clear on their face and thus subject to only one reasonable interpretation. In light of that conclusion, there was no need to resolve the dispute between the experts because their opinions did not pertain to any operative facts but rather presented two different interpretations of the language at issue – a purely legal issue.

Indeed, the CEA guidelines make no reference to pixels, but rather require that an HDTV have a widescreen (16x9) display with the requisite scanned or interlaced lines (720p or 1080i). On its face, the requirement of a widescreen (16x9) display refers to the physical dimension of the screen. That conclusion is bolstered by the use of "widescreen" before the numerical value 16x9 and no specific requirement as to pixel size. To adopt Ford's theory that the guidelines refer to pixel size, we would have to read a requirement

6

into the guidelines that is not present on their face. Because the language is clear on its face, it would be inappropriate to consider extrinsic evidence, such as expert opinions, to interpret the guidelines.[1] The parties did not dispute that the television at issue met the 16x9 widescreen requirement as applying to the physical dimensions of the screen. Thus, the Court was correct in ruling that it was unnecessary to resolve the dispute between the two qualified experts.

Ford argues that summary judgment was inappropriate because the parties' experts disputed the meaning and satisfaction of an industry standard or definition. But that argument misses the point. The parties agreed that the CEA guidelines were the operative industry standard or definition, not that an expert opinion was needed to distill an industry standard where one was not already readily available. It is a fundamental principle of contract interpretation that no extrinsic evidence regarding an industry standard is necessary if the language at issue is clear on its face; the same principle applies here. Here, the experts' dispute was irrelevant, as the District Court noted, because the experts were offering their interpretations about what the guidelines meant, which interpretation a court may just as easily undertake to carry out without the assistance of expert testimony.

---

[1] Ford argues that the Court should not have considered certain excerpts from Consumer Reports in making its decision. The Court explicitly stated that it did not "rely heavily upon them." Ford App. at 93. Rather, the Consumer Reports articles simply provided another perspective that the CEA guidelines were clear on their face and did not refer to pixels.

7

**IV.**

For the above-stated reasons, we will affirm the judgment of the District Court.